401 P.2d 721

**STATE of Arizona, Appellee,**

v.

**Ernest Arthur MIRANDA, Appellant.**

No. 1394.

Supreme Court of Arizona.

En Banc.

April 22, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., Allen L. Feinstein, Phoenix, of counsel, for appellee.

Alvin Moore, Phoenix, for appellant.

McFARLAND, Justice:

Appellant was convicted of the crime of kidnapping, Count I; and Rape, Count II; and sentenced to serve from twenty to thirty years on each count, to run concurrently. From the judgment and sentence of the court he appeals. Appellant, hereinafter called defendant, was in another information charged with the crime of robbery. After arraignment in the instant case, on motion of the county attorney, the trial on the robbery case was consolidated with the instant case, but thereafter—one day prior to the trial of this case—separate trials were granted. Defendant was tried and convicted on the robbery charge, from which he is also appealing in the companion case of State v. Miranda, No. 1397, 98 Ariz. 11, 401 P.2d 716.

The facts, as they relate to the defense as charged under Counts I and II in the instant case are as follows: On March 3, 1963, the complaining witness—a girl eighteen years of age—had been working in the concession stand at the Paramount Theatre in downtown Phoenix, and had taken the bus to 7th Street and Marlette. After getting off the bus, she had started to walk toward her home. She observed a car, which afterwards proved to be defendant's, which had been parked behind the ballet school on Marlette. The car pulled out of the lot, and came so close to her that she had to jump back to prevent being hit. It then parked across from some apartments in the same block. Defendant then left his car, walked toward her, and grabbed her. He told her not to scream, that he would not hurt her. He held her hands behind her back, put a hand over her mouth, and pulled her toward the car. He put her in the back seat, tied her hands and feet, and put a sharp thing to her neck and said to her "Feel this." She stated it all happened so suddenly that she did not have time to do anything. Defendant was unknown to the complaining witness. She had not seen him before, and he was not related to her in any way.

He then drove the car for about twenty minutes, during which time complaining witness was lying in the back seat crying. When defendant stopped the car, he came to the back seat, and untied her hands and feet. He told her to pull off her clothes. She said "no," whereupon he started to remove them. She tried to push away from him, but he proceeded to remove her clothing. And, then, after one unsuccessful attempt, made a successful sexual penetration, while she pushed with her hands and was screaming. She testified:

"I was pushing against him with my hands. I kept screaming, I was trying to get away but he was a lot stronger than I was, and I couldn't do anything."

He then drove her to 12th Street and Rose Lane, during which time she dressed. She ran home, and told her family, who called the police. Her sister testified that the complaining witness came home that morning crying and looking as if she had been in a fight. On March 13, 1963, defendant was apprehended by the police. The officers who picked him up both testified that he was put into the "line-up" and was identified by complaining witness. Thereafter he confessed that he had forced complaining witness into his car, drove away with her, and raped her. After these statements he signed a statement, partly typed and partly in his own handwriting, which was substantially to the same effect as the testimony of the officers. Defendant offered no evidence in his defense at the trial of his case.

Defendant assigns as error the following: denial of the motion to quash the information; denial of his motion to dismiss the action on the ground that the case was not brought to trial within sixty days, under Rule 236, Rules of Criminal Procedure, 17 A.R.S. (1956); the county attorney's arguing the proposition of fear to the jury; the admission of the confession of defendant; that the verdict was not sustained by the evidence; and denial of defendant's motion for an instructed verdict.

We shall consider first the denial of the motion to quash the information. A.R.S. § 13–492 reads as follows:

"A. A person, except in the case of a minor by the parent, who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains such individual for ransom, reward or otherwise, or to commit extortion or robbery, or to exact from relatives of such person or from any other person any money or valuable thing, or a person who aids or abets any such conduct, is guilty of a felony.

"B. A person, except in the case of a minor by the parent, who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any child under the age of fourteen years by any means whatsoever with intent to hold or detain, or who holds or detains such child for the purpose of raping or committing sodomy, or lewd or lascivious acts upon the person of such child, or a person who aids or abets any such conduct, is guilty of a felony.

"C. A person convicted under subsections A or B of this section shall be punished as follows:

"1. If the person subjected to the acts mentioned in subsections A or B suffers serious bodily harm inflicted by the person found guilty, the person found guilty shall be punished by death or by life imprisonment without possibility of parole, whichever the jury recommends.

"2. If the person subjected to any acts mentioned in subsection A or B does not suffer serious bodily harm the person found guilty shall be punished by imprisonment in the state prison from twenty to fifty years without possibility of parole until the minimum sentence has been served. As amended Laws 1956, Ch. 92, § 1."

Defendant contends that there were objectionable, prejudicial and redundant, and unnecessary words in the following portion of the information:

"[D]id then and there wilfully, unlawfully and feloniously, seize, confine, abduct, conceal, kidnap or carry away one [complaining witness] for the purpose of raping *and did rape* said [complaining witness], *said [complaining witness] not being related in any way to said defendant,* * * *." (Italics added.)

The words which he complains of were the words italicized. We have held the word "otherwise," in A.R.S. § 13–492 Subsec. A, includes other crimes such as rape.

State v. Jacobs, 93 Ariz. 336, 380 P.2d 998; and State v. Taylor, 82 Ariz. 289, 312 P.2d 162.

In State v. Jacobs, supra, we stated:

"We therefore now hold that the crime of kidnapping with intent to commit rape may be charged under A.R.S. § 13–492, subd. A." 93 Ariz. at 341, 380 P.2d at 1002.

The history and reason for the broadening of the kidnapping statute was well set forth in the Jacobs case. The information properly referred to "rape" because that was the purpose of the kidnapping. The use of the words "and did rape" was no more inflammatory than the allegation "for the purpose of raping," which was necessary and proper, as held in Jacobs, supra. The commission of rape was charged in Count II, and so defendant could not have been prejudiced by the use of the word in Count I. The objection to the other language—namely, "not being related in any way to the defendant"—certainly is without foundation. The only object of the allegation was to show that the case did not fall within the exception, i. e., the taking of a minor by a parent. Under no stretch of the imagination could these words be construed as inflammatory, as contended by defendant.

As to the second part of the information charging the crime of rape, de-

fendant contends that because originally the word "fear" was ·in the information it was prejudicial. However, defendant made a motion to quash the information, and, on May 2d, before the trial, the court entered an order denying defendant's motion to quash but ordered the word "fear" to be stricken from the information. Hence the information upon which defendant was tried and which was read to the jury did not contain the word "fear." So the word "fear" originally in the information could not have had any prejudicial effect. The case was submitted under proper instructions defining rape under A:R.S. § 13-611, Subsec. A. Par. 2 namely:

> "2. Where the female resists,. but her resistance is overcome by force or violence."

■ Defendant contends that it was error to deny his motion to dismiss the action on the ground that the case was not brought to trial within the sixty days provided for under Rule of Criminal Procedure, No. 236, which reads:

> "When a person has been held to answer for an offense, if an information is not filed against him for the offense within thirty days thereafter, or when a person has been indicted or informed against for an offense, if he is not brought to trial for the offense within sixty days after the indictment has been found or the information filed, the prosecution shall be dismissed upon the application of such person, or of the county attorney, or on the motion of the court itself, unless good cause to the contrary is shown by affidavit, or unless the action has not proceeded to trial because of the defendant's consent or by his action. When good cause is shown, the action may be continued, in which event the defendant if bailable shall be released on bail either on his own recognizance or on the undertaking of sureties." 17 A.R.S. (1956).

This contention is without merit, as defendant made application for a sanity hearing under Rules of Criminal Procedure, No. 250, 17 A.R.S. (1956), just one week prior to the time of the original trial setting. The trial setting was well within the 60-day period. It was defendant's application for the sanity hearing which caused the delay. At the hearing on this application, and without objection of defendant's counsel, a new date for trial was set—June 10, 1963—which was also within the 60-day period. One of the medical reports was not filed until June 7, 1963. Defendant was thereafter promptly tried—just two days after the ruling was made on the motion for the sanity hearing. Thus, it is evident that the delay of the trial was due to defendant's waiting until just one week before trial date to make his motion for the sanity hearing. This was good cause

for continuance. Even with the delay occasioned by defendant's own action, trial was held June 20, 1963, only five days beyond the 60-day period. Where good cause is shown, under Rules of Criminal Procedure, No. 236, an action may be continued. Westover v. State, 66 Ariz. 145, 185 P.2d 315; Power v. State, 43 Ariz. 329, 30 P.2d 1059.

■ Defendant contends that there was prejudicial error committed by the deputy county attorney when he argued before the jury that the victim acquiesced in the act due to fear. Defendant contends that this argument, notwithstanding the court's instruction to disregard it, was so prejudicial and inflammatory as to deny defendant a fair and impartial trial. We cannot agree with defendant's interpretation. Certainly the testimony justified the county attorney's conclusion of fear. There was such testimony by the complaining witness as: "He had my hands behind my back, and one hand over my mouth, and started pulling me toward the car"; "He tied my hands and my ankles, after he got out, he put this sharp thing to my neck and said 'Feel this' * * * I kept screaming 'Please let me go,'"; and when he was undressing her, she stated she was crying again and said "Please don't." This court has repeatedly held that attorneys are given a wide latitude in their arguments to the jury. State v. Dowthard, 92 Ariz. 44, 373 P.2d 357; State v. Thomas, 78 Ariz. 52, 275 P.2d 408; State

v. McLain, 74 Ariz. 132, 245 P.2d 278. In addition, any possible prejudice was corrected by the court's prompt instruction to disregard, coupled with the instructions given at the close of trial, viz., limiting the jury's consideration to the offense charged —Rape, A.R.S. § 13-611, Subsec. A, Par. 2.

■ Defendant contends that the verdict is unsupported by the evidence, viz., there is no showing that the victim resisted the perpetration of the rape. This court cannot find merit in this contention. The victim testified that she pushed against defendant with her hands, and kept screaming; that she was trying to get away, and she testified that he was a lot stronger than she was, and she could not do anything. She also testified to penetration and defendant's confession showed penetration. These were questions for the jury, and the jury decided against defendant. We have repeatedly held that all inferences must be construed in the light most favorable to sustaining the verdict, and that where there is evidence to support a verdict we will not disturb a finding of a jury. State v. Hernandez, 96 Ariz. 28, 391 P.2d 586; State v. Maxwell, 95 Ariz. 396, 391 P.2d 560.

Defendant contends that admission into evidence of his written confession was error for the reason that he did not have an attorney at the time the statement was made and signed. The police officers Young and Cooley testified to oral statements made to

them before the signing of the written confession. Their testimony was substantially the same. They first saw defendant at his home at 2525 West Maricopa on March 13, 1963, when they went there for the purpose of investigating a rape. They took defendant to the police station and placed him in a "line-up" with "four other Mexican males, all approximately the same age and height, build," and brought in the complaining witness who identified him as the one who had perpetrated the acts against her. Then they immediately interrogated him. They advised him of his rights. They testified that he made the statement of his own free will; and that there were no threats, or use of force and coercion, or promises of immunity; that they had informed him of his legal rights and that any statement he made might be used against him.

The oral statement by defendant, as related to police officers, is set forth in the testimony of Detective Carroll Cooley:

"A He saw this girl walking on the street, he said, so he decided he would pull up ahead of her and stop. He stopped and got out of his car and opened the back door of his automobile. He said when the girl approached him he told her, he said, 'Don't make any noise, and get into the car,' and he said she got into the car, he said, in the back seat.

"After getting into the car, he said he took a small rope he had inside the car and he tied her hands and her ankles, then he got into the front seat behind the driver's wheel and he drove to a location several miles from there in the northeast direction to the area of a desert.

"Q Did he tell you what street this took place on?

"A He didn't know the street. I asked him the street, and he didn't know the name of the street, he didn't know exactly where he was located when he stopped. It was just in the desert area, couple of miles from where he picked the girl up.

"He said then when he got there he noticed that the girl was untied, and he got into the back seat and he asked her if she would, or he told her to take her clothes off and she said, 'No, would you please take me home?'

"He said then he took her clothes off for her. After he had undressed her, she began to cry, and started begging him to not do this. She said she had never had any relations with a man before.

"He said he went ahead and performed the act of intercourse, and in so doing was only able to get about a half inch of his penis in and at which time he said he did reach a climax, but he

didn't believe that he had reached a climax inside of her.

"He said after the act of intercourse, he then told her to get dressed and asked her where she lived and she told him in the area, she told him 10th or 12th Street. He couldn't remember where, so he said he drove her back to the area where he picked her up and dropped her off in that general area.

"When he started to let her out, why she told him, 'Well, this is not where I live.'

"He said, 'This is as far as I am taking you,' and then he asked her if she would pray for him. She got out of the car and he left and he said then he went home.

"Q Was that the essence of the conversation you had with him at that time?

"A That was the essence of the conversation.

"Q Officer, was this conversation reduced, or was the defendant's conversation with you reduced to writing?

"A Yes, Sir it was.

"Q Who wrote it down, Officer?

"A He wrote his own statement down.

"Q He wrote it down?

"A Yes, Sir.

"Q Were you present, Officer, when he wrote this?

"A Yes, Sir, I was."

This oral statement was corroborated by the testimony of Officer Young. At the conclusion of Officer Cooley's testimony the statement of defendant was offered in evidence. Officer Cooley was examined on voir dire, as follows:

"Q Is this the statement that you said the defendant reduced to writing?

"A Yes, Sir, it is.

"[Prosecuting Attorney]: At this time, State will move to introduce the exhibit in evidence.

"[Defense Attorney]: May I ask some questions on voir dire?

"THE COURT: Yes, you may.

"[Defense Attorney]: Q Officer Cooley, in the taking of this statement, what did you say to the defendant to get him to make this statement?

"A I asked the defendant if he would tell us, write the same story that he had just told me, and he said that he would.

"Q Did you warn him of his rights?

"A Yes, Sir, at the heading of the statement is a paragraph typed out, and I read this paragraph to him outloud.

"Q Did you read that to him outloud?

"A Yes, Sir.

"Q But did you ever, before or during your conversation or before taking this statement, did you ever advise the defendant he was entitled to the services of an attorney?

"A When I read—

"Q Before he made any statement?

"A When I read the statement right there.

"Q I don't see in the statement that it says where he is entitled to the advise of an attorney before he made it.

"A No, Sir.

"Q It is not in that statement?

"A It doesn't say anything about an attorney. Would you like for me to read it?

"Q No, it will be an exhibit if it is admitted and the jury can read it, but you didn't tell him he could have an attorney?"

The signed statement admitted in evidence is as follows:

"I, Ernest A. Miranda, do hereby swear that I make this statement voluntarily and of my own free will, with no threats, coercion, or promises of immunity, and with full knowledge of my legal rights, understanding any statement I make may be used against me.

"I, Ernest A. Miranda, am 23 years of age and have completed the 8th grade in school.

"Seen a girl walking up street stopped a little ahead of her got out of car walked towards her grabbed her by the arm and asked to get in the car. Got in car without force tied hands & ankles. Drove away for a few miles. Stopped asked to take clothes off. Did not, asked me to take her back home. I started to take clothes off her without any force, and with cooperation. Asked her to lay down and she did. Could not get penis into vagina got about ½ (half) inch in. Told her to get clothes back on. Drove her home. I couldn't say I was sorry for what I had done. But asked her to say a prayer for me.

"I have read and understand the foregoing statement and hereby swear to its truthfulness.

"/s/ Ernest A. Miranda

"WITNESS: /s/ Carroll Cooley
 /s/ Wilfred M. Young,
 #182"

It will be noted that the only objection made to the testimony was in regard to the narrative form of the answers. The record shows the trial court did not err in the exercise of its discretion in the admission of this evidence.

The only objection made to the introduction of the signed statement was:

"We are objecting because the Supreme Court of the United States says the man is entitled to an attorney at the time of his arrest."

No objection was made on the ground that the statement was not shown to be voluntary, and no request was made for a determination of the voluntariness of the confession outside of the presence of the jury.

In State v. Owen, 96 Ariz. 274, 394 P.2d 206, after the Supreme Court of the United States (378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041) granted a petition for a writ of certiorari, judgment was vacated, and the case remanded for further proceedings not inconsistent with the opinion in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908, and, in accordance with the mandate of the U. S. Supreme Court, we held:

"However, since the Supreme Court vacated the judgment of this Court [Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] we are of the opinion that it was intended that we follow the rule that statements or admissions, which have been induced by a method in violation of a defendant's constitutional rights, are subject to the same exclusionary rule as a confession. (Cases cited.)" 96 Ariz. at 276, 394 P.2d at 207.

In the instant case request was not made for a determination of the voluntariness of the testimony out of the presence of the jury, nor was its voluntariness questioned or evidence offered to prove it involuntary. No question was presented to the court—either from the evidence or by the attorney—suggesting that there should be a determination as to the voluntariness of the evidence, and no request was made therefor. Officers Cooley and Young had testified to substantially the same facts as were contained in the written statement without objection except to the form of the questions. In his appeal, defendant's only contention is that he did not have an attorney. The evidence clearly shows that the statement was voluntary. The officers testified that there were no threats or use of any force or coercion, and no promise of immunity; that defendant was advised of his rights, and that any statement he made might be used against him. The record in this case, and the companion robbery case, No. 1397, shows that defendant was identified, interrogated, and signed confessions in both cases in approximately two hours.

The procedure to be followed in regard to confessions is clearly set forth in State v. Owen, supra, where we held, in line with Jackson v. Denno, supra, that:

" * * * when a question is raised as to voluntariness of a statement constituting either admissions against inter-

**30**

est, exculpatory or otherwise, or a confession, it must be resolved by the judge outside the presence of the jury. If he determines it was involuntary, it will not be admitted. If he determines it was voluntary, it may be admitted." 96 Ariz. at 277, 394 P.2d at 208.

Counsel for defendant evidently determined that the statement was voluntary, or he would have made a request for a hearing out of the presence of the jury. There not having been an issue presented in regard to voluntariness—either from evidence or by request made for a hearing on its voluntariness—and a proper foundation having been laid for its introduction, there was no question to be determined by the court. The failure of the court to give such a hearing is not assigned as error in this case. The only question presented is whether it is proper to admit a statement voluntarily made where defendant did not have an attorney at the time he signed the statement.

The facts of Jackson v. Denno, supra, were different from those of the instant case. In that case there was a serious question in regard to whether the confession was voluntary, so the court laid down the rule which was followed by this court in the Owen case. We held that when requested there must first be a determination by the court in the absence of the jury as to whether a statement was voluntary. If it were involuntary, that ended the matter.

If the court determined it to be voluntary, following the Massachusetts rule, we held it was still the duty of the court to submit the question again to the jury, and the jury might reject it on the grounds that it was involuntary.

The voluntariness and the truth of the confession were not denied. However, the defendant did not have an attorney at the time he made the confession. The sole question before the court, then, is whether there was a violation of the rights of defendant under the Sixth and Fourteenth Amendments to the Constitution by the admission of the voluntary statement made without an attorney.

We recognize that in passing upon constitutional provisions applicable to the instant case it is our duty to follow the interpretations of the Supreme Court of the United States. There is a long list of these cases, the most recent of which are Escobedo v. State of Illinois (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; and Massiah v. United States (1964) 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.

In Massiah, supra, the court held invalid a conviction on statements which were secured by placing a hidden radio microphone in a co-defendant's car so that government agents could pick up a conversation between defendants. Indictment already had been returned, and counsel retained by defendant. The Massiah case is not in point. The

defendant in that case was not aware that his conversation was being picked up by the government agents, and he had not been put on notice that what he was saying might be used against him, nor did he know that the federal agents were eavesdropping on his conversation. Under these circumstances it was evident that he did not know his statement might be used against him, and the court held that such an incriminating statement was inadmissible.

In the Escobedo case, supra, defendant's brother-in-law had been fatally shot on January 19, 1960. Defendant had been arrested at 2:30 a. m. the next morning without a warrant and interrogated. He was released at 5:00 p. m. pursuant to a state court writ of habeas corpus. On January 30th, one DiGerlando, who was then in custody and later indicted along with defendant, told police that Escobedo had fired the fatal shot. That evening between 8:00 and 9:00 o'clock, Escobedo and his sister, the widow of deceased, were arrested and taken to headquarters. Escobedo had been handcuffed. Escobedo was told by the detective, in his words, that "they had us pretty well, up pretty tight, and we might as well admit to this crime." Escobedo then told them he wanted a lawyer. The police officer testified that although defendant was not formally charged he was in custody and could not walk out of the door.

The facts of the case also show that shortly after defendant reached police head-quarters his lawyer arrived, and that he requested to see defendant, which request was denied. This was between 9:30 and 10:00 in the evening. Also, that all during questioning defendant asked to speak to his lawyer, and the police said his lawyer didn't want to see him. Notwithstanding both the request of the defendant and his retained lawyer, he was denied the opportunity to consult with his lawyer during the course of the entire interrogation. The court, in discussing the testimony, stated:

"The critical question in this case is whether, under the circumstances, the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799, and thereby renders inadmissible in a state criminal trial any incriminating statement elicited by the police during the interrogation." 378 U.S. at 479, 84 S.Ct. at 1759.

Under these circumstances, after review of the facts and the decisions on the question, the court stated:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime

32

but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police ·have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, 83 S.Ct., at 795, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial. [378 U.S. at 490, 84 S.Ct. at 1765]

\* \* \* \* \* \*

"Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' Spano v. [People of State of] New York, 360 U.S. 315, 327, 79 S.Ct. 1202, 1209 [3 L.Ed.2d 1265] (Stewart, J., concurring), by gathering information from witnesses and by other 'proper investigative efforts.' Haynes v. [State of] Washington, 373 U.S. 503, ·519, 83 S.Ct. 1336, 1346 [10 L.Ed.2d 513]. We hold only that when the process shifts from investigatory to accusatory—when its

focus is on the accused and its purpose is to elicit a confession—our adversary system beings to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." 378 U.S. at 492, 84 S.Ct. at 1766.

It will be noted that the court in the Escobedo case set forth the circumstances under which a statement would be held inadmissible, namely: (1) The general inquiry into an unsolved crime must have begun to focus on a particular suspect. (2) The suspect must have been taken into police custody. (3) The police in its interrogation must have elicited an incriminating statement. (4) The suspect must have requested and been denied an opportunity to consult with his lawyer. (5) The police must not have effectively warned the suspect of his constitutional rights to remain silent.

 When all of these five factors occur, then the Escobedo case is a controlling precedent. As to whether identification of a defendant in a "line-up" is sufficient to focus the investigation upon a defendant depends upon all· of the facts and circumstances surrounding the case. ˙We call attention to the fact that the crime committed in the instant ˙case· occurred in the night time, and that there is always a chance of a mistake in identity under such circumstances on account of the excitement of the

complaining witness, and difficulty of identity at night. Even where a complaining witness identifies a defendant in a line-up, as in the instant case, officers may well feel that a defendant should have the right and privilege of explaining his whereabouts at the particular time which could be checked by the officers. One of the chief duties of both the sheriff's office and the county attorney's office is to make sure that people are not unjustly charged with crime. It is their duty to protect the innocent as well as detect the guilty. In United States v. Konigsberg, 3 Cir., 336 F.2d 844 (1964), the court stated:

> "In this appeal at the time the F.B.I. agents talked with Konigsberg the process was definitely investigative and never shifted to accusatory. Its purpose was not to elicit a confession; there were no threats or attempt to extract admissions from Konigsberg, damaging or otherwise. The uncontradicted purpose of the discussion was to give Konigsberg a chance to explain his presence in the garage if he could; to hear Konigsberg's side of the story." 336 F.2d at 853.

The question of whether the investigation had focused on the accused at the time of the making of the statement and thereby shifted "from investigatory to accusatory" is not the deciding factor in regard to the admissibility of the confession in the instant case. There are other factors under the ruling of the Escobedo case. Defendant in the instant case was advised of his rights. He had not requested counsel, and had not been denied assistance of counsel. We further call attention to the fact that, as pointed out in the companion case here on appeal, State v. Miranda, No. 1397, defendant had a record which indicated that he was not without courtroom experience. State v. Cuzick, 97 Ariz. 130, 397 P.2d 629, 631. It included being arrested in California on suspicion of armed robbery, and a conviction and sentence in Tennessee on violations of the Dyer Act. Under these circumstances he was certainly not unfamiliar with legal proceedings and his rights in court. The police testified they had informed defendant of his rights, and he stated in his written confession that he understood his rights (which would certainly include the right to counsel), and it is not for this court to dispute his statement that he did. His experience under previous cases would indicate that his statement that he understood his rights was true.

In the case of Commonwealth (Pa.) v. Coyle, 415 Pa. 379, 203 A.2d 782, the court said:

> "During the course of Lt. Cullinane's questioning, the record is convincing that the appellant did not ask for the assistance of counsel. We note that this, in itself, is not controlling since if such assistance were constitutionally required, the right thereto would not

depend on a request: Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L. Ed.2d 70 (1962). However, this factor substantially distinguishes the present case from the situation presented in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Further, we do not interpret Escobedo to mean that, counsel must immediately be afforded one taken into custody, under all circumstances, particularly where none is requested. The mere fact that appellant was unrepresented by counsel during the questioning does not invalidate admissions made against interest. See, Commonwealth v. Graham, 408 Pa. 155, 182 A. 2d 727 (1962); Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); Cicenia v. LaGay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958)." 203 A.2d at 794.

In Anderson v. State of Maryland, 237 Md. 45, 205 A.2d 281 (1964) the court stated:

"The appellant urges that the confession was inadmissible because he did not have counsel when he made it, citing Escobedo v. [State of] Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964). This contention is without merit since there is no evidence that he ever requested counsel. See Green v. State, supra [236 Md. 334, 203 A.2d 870], and Mefford and Blackburn v. State, 235 Md. 497, 201 A.2d 824 (1964).

"Careful inspection of the record concerning the circumstances surrounding the giving of the confession reveals no evidence that it was not freely and voluntarily made. There is no evidence that the appellant ever asked to contact his family or requested food. He was not questioned by relays of officers. According to the police testimony and the written confession itself, the appellant was advised that his statement must be voluntary, that there would be no threats or promises, and that it could be used in a court of law against him. There was no contradictory evidence. The trial court's finding that the confession was voluntary was supported by the evidence." 205 A.2d at 285.

We also note the interpretation of the federal court of the effect of the Escobedo case, at set forth in Jackson v. United States, D.C.Cir., 337 F.2d 136 (1964).

"Defense counsel moved to suppress 'any and all confessions and admissions written or oral obtained by the United States since the date of his arrest and presentation to a committing magistrate.' As grounds for the motion, appellant claimed that the confessions and admissions were elicited from him 'in-

voluntarily' in violation of the Fifth Amendment and of the appellant's right to counsel under the Sixth Amendment. [337 F.2d at 138]

"Obviously neither Escobedo nor Massiah can be read as barring use of this appellant's confession. Many, learned in the law, deeply believe that no accused should be convicted out of his own mouth. But the Supreme Court has never announced any such proposition—not even where the accused had no attorney and had received no Rule 5 'judicial caution.' United States v. Mitchell, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). We said as much ourselves only a month ago in Ramey v. United States, 118 U.S.App.D.C. 355, 336 F.2d 743 (1964), cert. denied [379 U.S. 840], 85 S.Ct. 79 [13 L.Ed.2d 47] (1964) and see United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951) where Rule 5 advice had been imparted. If there were a rule that a confession may not be received *if made by an accused without counsel,* that would be the end of this case—and of scores like it.

"We conclude that no rule of law required the exclusion of this appellant's confession, voluntarily made, after he had been warned by the F.B.I., the police and the United States Commissioner acting pursuant to Rule 40(b). He had not requested that counsel be appointed; he had retained no lawyer; that one was not then appointed for him denied him no right; and as the law now stands, there is no automatic rule of exclusion which will bar use of such a confession by an accused who has no lawyer, under circumstances such as appear on the record before us." 337 F.2d at 140.

Other cases, in interpreting the effect of Massiah and Escobedo, have held that the test of admissibility of a statement was not whether defendant had counsel but whether the statement was in effect voluntary, some even holding that it was not necessary that he be warned that it might be used against him. People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33; People v. Agar, 44 Misc.2d 396, 253 N.Y.S.2d 761; Commonwealth (Pa.) v. Patrick, 416 Pa. 437, 206 A.2d 295; United States v. Konigsberg, supra; State v. Fox, 131 N.W.2d 684 (Iowa); State v. Worley, 178 Neb. 232, 132 N.W.2d 764.

What is the purpose of the right to counsel? What is the purpose of the Sixth and Fourteenth Amendments? Without question it is to protect individual rights which we cherish, but there must be a balance between the competing interests of society and the rights of the individual. Society has the right of protection against those who roam the streets for the purpose of violating the law, but that protection must not be at the expense of the rights of the individual guaranteed under the Sixth and

Fourteenth Amendments to our Constitution.

In Bean v. State (Nev.), 398 P.2d 251 (1965), the court, after discussing the Escobedo case, stated:

"Here it is true that the investigation had begun to focus upon Bean; that he had been taken into police custody; that the police were about to commence a process of interrogation to elicit incriminating statements, and did so; that Bean was not warned of his absolute constitutional right to remain silent. However, Bean did not request counsel, nor was he denied the assistance of counsel. Absent such a request, and denial of counsel, the rule of Escobedo does not apply.

\* \* \* \* \* \*

"In Morford v. State, 80 Nev. ——, 395 P.2d 861, we discussed the Dorado case, pointing out that it is an extension of the rule announced in Escobedo, and chose not to follow it." 398 P.2d at 254.

We are familiar with the case of State of California v. Dorado, Cal., 40 Cal.Rptr. 264, 394 P.2d 952, and, like the Supreme Court of Nevada, do not choose to follow Dorado in the extension of the rule announced in Escobedo, supra.

■ It will be noted in the discussion of these cases—particularly the Escobedo case—the ruling of the court is based upon the circumstances of the particular case. The court, in making its holding in the Escobedo case, stated "under the circumstances here, the accused must be permitted to consult with his lawyer." Most of the cases distinguish the Escobedo case on the grounds that the defendant requested and was denied the right to counsel during interrogation. The Escobedo case merely points out factors under which—if all exist—it would not be admissible. We hold that a confession may be admissible when made without an attorney if it is voluntary and does not violate the constitutional rights of defendant.

Each case must largely turn upon its own facts, and the court must examine all the circumstances surrounding the taking of the statement in determining whether it is voluntary, and whether defendant's constitutional rights have been violated.

■ The facts and circumstances in the instant case show that the statement was voluntary, made by defendant of his own free will, that no threats or use of force or coercion or promise of immunity were made; and that he understood his legal right and the statement might be used against him. Under such facts and circumstances we hold that, notwithstanding the fact that he did not have an attorney at the time he made the statement, and the investigation was beginning to focus upon him, defendant's constitutional rights were

not violated, and it was proper to admit the statement in evidence.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and UDALL, JJ., concurring.