404 P.2d 732

**STATE of Arizona, Appellee,**
**v.**
**Thomas G. FULLEN, Appellant.***
**I CA–CR 26.**

Court of Appeals of Arizona.
Aug. 9, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's number 1458. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Robert W. Pickrell, Former Atty. Gen., Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

Thayer C. Lindauer, Phoenix, for appellant.

DONOFRIO, Judge.

This is an appeal by Thomas Gillette Fullen (hereafter also referred to as defendant) from a conviction of the crime of drawing a check on no account and from a denial of his motion for a new trial. Defendant's sentence was three to five years and took into consideration an admitted prior conviction for the same type of crime.

Defendant filed his notice of appeal in propria persona after which the Supreme Court remanded the case back by minute entry to the Superior Court for further hearing on defendant's motion for new trial.

The hearing was held by the trial court which heard testimony from the prosecuting witness, Mr. Glen R. Dunning, the investigating officer, Mr. Larry Penrod and the attorney representing defendant. This motion for new trial pursuant to newly discovered evidence was then taken under advisement and later denied. This consolidated appeal followed.

Defendant is urging two main questions on appeal. First, that the trial court abused its discretion in denying the motion for new trial because the newly discovered evidence shows that the two prosecution witnesses by their acts in identifying defendant prior to trial caused a substantial impeachment to exist as to the weight of their testimony; secondly, that the court erred in admitting

evidence of an alleged oral confession by defendant since the manner in which it was elicited was in violation of his constitutional rights.

The first question is based principally upon the contention that the newly discovered evidence would show that Officer Penrod primed or coached the witness Dunning in his identification of defendant. The contention also is that defendant is not guilty of any lack of diligence in discovering or producing this evidence at trial. The second is based on the contention that defendant's constitutional rights have been violated by not fully advising him prior to the taking of his confession, that he had the right to remain silent and to have the presence and advice of counsel.

Relating to the first question the pertinent facts produced at the trial are as follows:

The prosecuting witness Dunning, who was the manager of the Totem Department Store on West Van Buren Street in Phoenix, testified that he made a sale to defendant on September 4, 1963, at check-out stand number two of the store. The defendant came through the line with a pair of shoes and a check made out for $10.00. In payment of the shoes defendant handed Dunning the check which was for a larger amount than the purchase. Dunning thereupon told him that they were not supposed to take a check for more than the purchase. Defendant indicated he did not have another check with him to make out, whereupon Dunning asked him for his driver's license which was furnished. The license number was placed on the back of the check and the check accepted. The check was returned "no account". Dunning testified the store later received a $5.00 cashier's check from defendant for restitution which it still retained.

Dunning, who was the only witness to the passing of the check, was cross-examined considerably regarding his identification of defendant. Defense brought out that about 500 checks were cashed weekly at the store and that Dunning cashed about 50 of them

personally. He testified that it would depend on the circumstances of the case as to whether he would take special notice of the customer. His testimony was that "if the check is written for more than the amount of the purchase I take special notice of the person in my own mind". The witness was specifically questioned on the subject of his prior identification of defendant.

On the question of diligence in discovering the now asserted new evidence it becomes important to know if counsel had the opportunity of developing the evidence at trial and relinquished it. For if such is the case it cannot be said that the evidence is of such a nature that counsel in the exercise of diligence and ordinary care could not have found it during trial.

Pertinent in this respect is the following cross-examination of the witness Dunning:

"Q. Could you explain to the court and to the jury—let me rephrase the question—or, ask a different question to you, Mr. Dunning. I find it quite admirable that you take notice of these people as they come through. But, do you mean to tell me that the State never requested you to identify the defendant? Were you informed— you were informed, weren't you when he was arrested?

A. I was informed that he was in and out at that time.

Q. What do you mean by in and out?

A. That's all I understand. Now, the gentleman came out from—
MR. MARTIN: Your Honor, I'm going to object to this line as laying something for—I'd like to discuss in chambers.
THE COURT: I don't run back to chambers. You tell him your problem and maybe he will—
MR. LINDAUER:

Q. Let me see if I can rephrase the question to you, Mr. Dunning.
THE COURT: Very well."

It would appear that defendant did not pursue questioning which in all probability would have developed the facts he now contends are newly discovered. As later developed at the hearing on the motion for new trial, it was on the occasion of the officers coming out to see Dunning that they mentioned defendant had been in custody and presented Dunning with the pictures and asked him to identify the defendant. The foregoing record shows Dunning gave answers indicating that officers had come out to see him before trial. That he was informed defendant had been "in and out at that time" which no doubt meant he had been in custody. It was at this point that the county attorney made objection (we can assume that it was because they were talking about matters that might impute other crimes, or that unless proper care was used other prejudicial matter might creep in) because he wanted no doubt, to make it clear that it was defendant's risk as to what evidence might come out. The record bears out that defendant was not prevented from pursuing his questioning in the matter. The trial court could reasonably have believed that the same evidence could have been discovered with reasonable diligence at or before trial.

We next consider defendant's contention of coaching or priming the witness.

In reading the transcript of the hearing on the motion for new trial, we find the witness Dunning testifying substantially as he did at the trial. He did not vary in his identification of defendant. His examination covered such things as the number of customers at the check stand when defendant was there, the number of checks cashed by Dunning when they were made for more than the amount of the purchase, and how he handled and remembered the customers. Regarding identification, he was examined minutely as to defendant's clothing, face and features. Questions covered defendant's hair, teeth, eyes, eyebrows, nose, ears, skin and height. We cannot see where the evidence was different from

anything said at trial except that it made the identification more positive.

The new evidence relied mostly upon is that Officer Penrod went to Dunning during his investigation and took out two pictures (dual-profile police photographs) and threw them on the table and said "Which one is Fullen, pick him out." That before displaying the photographs he told Dunning they had Fullen in custody. The contention is that when Dunning identified defendant from the pictures under these circumstances, especially when he picked the person who turned out to be Fullen, it amounted to an identification caused by coaching or priming of the witness.

In this connection we set out the following pertinent portions of Dunning's testimony relating to the incident of prior identification when the officers came out to see him:

"A. * * * They talked to me a few moments. They said they were coming in from another case, and so forth, and they asked me if I could recognize Mr. Fullen, and I said 'I sure could.'

And they said, 'I have two or three pictures,' I don't remember if it was two or three pictures, and they put—

Q. They showed you two or three pictures?

A. Yes."

and,

"Q. Before they showed you the pictures, did they discuss the pictures?

A. No, they did not. They did not discuss the pictures at all, other than saying they had a couple of pictures they would like to have me look at."

and,

"Q. How were the pictures laid out?

A. They were just thrown on the table.

Q. Just thrown on the table?

A. Yes, he took them out of his briefcase and threw them on the table and said, 'Which one is Penrod, and pick him out.' Not Penrod, Fullen."

■■ We cannot agree that the handing of two or three photographs to a witness and asking him if he can recognize or pick out a person is coaching or priming. The identification of persons involved in crime through the use of photographs is quite common in police work. The number of photographs used would only go to the weight or credibility of the evidence. It would only matter if they were used improperly. For instance, in People v. Smith, 36 Cal.2d 444, 224 P.2d 719 (1950) the witness was shown the photographs of defendants and was told by the Warden "them are the men." This witness later testified that without the coaching he could not have identified the defendants. Such is not the instant case. We are of the opinion that the trial court could reasonably have concluded from the evidence that there was no coaching or priming.

Rule 310(3), Rules of Criminal Procedure, 17 A.R.S. provides that the court shall grant a new trial if the following grounds are established:

"That new and material evidence, which if introduced at the trial would probably have changed the verdict or the finding of the court, is discovered which the defendant could not with reasonable diligence have discovered and produced upon the trial."

■ A new trial for newly discovered evidence is mandatory if its introduction at trial would probably have changed the verdict and if the defendant could not, with reasonable diligence have discovered the evidence upon trial. State v. Daymus, 93 Ariz. 332, 380 P.2d 996 (1963).

■ However, the granting or denial of a motion for new trial on the grounds of newly discovered evidence rests in the sound discretion of the trial judge and a new trial ordinarily should not be granted solely upon impeaching or cumulative evidence, nor unless the showing is such as to render a different result upon a retrial probable. State v. Turner, 92 Ariz. 214, 375 P.2d 567 (1962); Talley v. State, 18 Ariz. 309, 159 P. 59 (1916); Young Chung v. State, 15 Ariz. 79, 136 P. 631 (1913); Flowers v. State, 27 Ariz. 70, 229 P. 1028 (1924).

■ The new evidence must be of such force that it probably would have changed the verdict, and it must be of such a nature that counsel exercising diligence would not have found it during the trial. We find no abuse of discretion in the trial court denying the motion for new trial for failure to meet these requirements.

We next turn to the question involving the alleged oral confession.

Officer Penrod testified that in investigating the case he talked to the defendant. After the officer advised him of his right to remain silent and to have an attorney if he wished, he questioned defendant concerning the check. That he asked defendant if he would fill in a handwriting exemplar card to which the defendant replied that he would not but that he would talk about the check. Penrod testified that the defendant admitted that he had written and passed the check and that he did not have an account with the bank.

■ At no time was there ever an objection to his testimony, nor was there any request for a hearing in the absence of the jury as to the voluntariness of the confession. Absent such objection and request the court is not required to make a preliminary finding on the voluntariness of a confession out of the presence of the jury. State v. Miranda, 98 Ariz. 18, 401 P.2d 721 (1965). All the evidence is to the effect that it was a voluntary statement.

The following is the testimony of the officer on this point:

"A. Well, first when I brought him to my office, I told him I had a matter under investigation and

felt that it concerned him. He was advised of his rights, and—

Q. When you say that, what do you mean?

A. The fact that he could have an attorney or he could refuse to talk to me if he desired. At that time I asked him if he would fill in a hand writing exemplar for me which is customary in our office, and, he said no he would not. And, I asked him if he would talk about this specific check, and he said yes."

and,

"Q. But, he didn't mind telling you as a police officer after you had told him of his constitutional rights not to speak, you know, that he just went right ahead and told you?

A. That's right. He said he would talk to me, but he wouldn't write anything."

■ Recently our Supreme Court passed upon a similar situation where the defendant did not have an attorney at the time of confession in State v. Miranda, (supra). The question, as in the instant case, was whether there was a violation of defendant's constitutional rights by the admission of a voluntary statement made without an attorney. The court recognized its duty to follow the United States Supreme Court cases, particularly, the recent cases of Escobedo v. State of Illinois (1964) 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; and Massiah v. United States (1964) 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; however, it distinguished these cases by pointing out, among other things, that in the Massiah case defendant was not put on notice that what he was saying might be used against him, and and that in the Escobedo case the defendant had requested counsel and was not advised of his rights. The court also pointed out that defendant in Miranda had a record which indicated he was not without court experience, citing State v. Cuzick, 97 Ariz. 130, 397 P.2d 629 (1964). The court held that defendant's constitutional rights were not violated. Although the Miranda case involves a written confession we believe it is equally controlling in the instant case of an oral confession.

Defendant cites People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952 (1964) wherein it was held that unless officers interrogating the defendant specifically informed him of his right to counsel or his right to remain silent there could be no intelligent waiver by defendant of his right to counsel. This opinion cited and relied upon has been vacated with a new opinion found in 42 Cal.Rptr. 169, 398 P.2d 361 (1965).

We have read this new opinion and find nothing contained therein requiring a specific warning to defendant of his right to counsel or to remain silent prior to eliciting incriminating statements from him when the evidence already shows that defendant knew he had such rights. This principle was applied in the Miranda case (supra).

We hold that defendant was notified of his legal rights and his response and previous experience with the law indicate that he understood the meaning of the terms used and was well aware of his rights. There has been an intelligent waiver of his rights as recognized in State v. Cuzick, 97 Ariz. 130, 397 P.2d 629 (1964) and State v. Anderson, 96 Ariz. 123, 392 P.2d 784 (1964).

Judgment affirmed.

CAMERON, Acting C. J., and Wm. W. NABOURS, Superior Court Judge, concurring.

NOTE:

Chief Judge Henry S. Stevens having requested that he be relieved from consideration of this matter, Judge Wm. W. Nabours was called to sit in his stead and participate in the determination of this decision.