429 P.2d 699

**Applications of Johnnie J. BILLIE and Leroy Jewelryman, for a Writ of Habeas Corpus.**

**No. 2 CA–HC 66.**

Court of Appeals of Arizona.

July 5, 1967.

Rehearing Denied Aug. 8, 1967.

Opinion Vacated Jan. 11, 1968.

See — Ariz. —, 436 P.2d 130.

Arthur William Vance, Jr., Window Rock, for petitioners.

Darrell F. Smith, Atty. Gen., Frank A. Parks, Asst. Atty. Gen., Phoenix, for respondent.

MOLLOY, Judge.

These original proceedings in habeas corpus[1] have been initiated in this court for the purpose of testing the validity of the applicants' detention in the State Industrial School. They claim that the orders of commitment issued by the Superior Court of Coconino County acting under statute pertaining to juvenile courts were illegal and void because neither the applicants nor their parents were advised of their right to counsel at any adjudicatory hearing to determine delinquency and/or commitment.

A detailed recitation of facts is unnecessary. The parties are agreed that neither the juveniles nor their parents were notified of the children's right to be represented by either retained counsel or court-appointed counsel. The sole question to be resolved in these proceedings is the applicability of the recent decision rendered by the Supreme Court of the United States in the case of In re Gault,[2] 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

Counsel for both parties before this court have assumed that *Gault* does not indicate whether it is to have "retroactive" application. We find ourselves unable to make this same assumption. *Gault* was a habeas corpus proceeding, attacking an adjudication which, under Arizona law, was final, because under our law there is no provision for an appeal from a judgment of a juvenile court. Ginn v. Superior Court, In and For County of Pima, 1 Ariz. App. 455, 404 P.2d 721 (1965); Application of Gault, 99 Ariz. 181, 407 P.2d 760 (1965). In *Gault,* the petitioner had been adjudicated a delinquent and placed on probation on February 5, 1964, and committed to the State Industrial School on June 15, 1964. The petition for writ of habeas corpus was filed on August 3, 1964. In

1. A similar petition for writ of habeas corpus was denied by the superior court of Graham county on June 6, 1967, after a full factual hearing. The parties hereto have stipulated that the record made in that proceeding may be considered in disposing of the pending application to

this court and that no factual hearing will be held here.

2. An appeal from a judgment of the Supreme Court of Arizona affirming the dismissal of a petition for a writ of habeas corpus (99 Ariz. 181, 407 P.2d 760 (1965)).

the instant case, the commitment order was entered March 9, 1967, and a petition for writ of habeas corpus was filed on May 23, 1967. In this state, there is no particular time limit for making application for a special writ. Industrial Commission v. Superior Court, 5 Ariz.App. 100, 423 P.2d 375 (1967).

■ We see no substantial difference between the procedural posture of the instant case and that of *Gault*. Both involved petitions for writ of habeas corpus, which the Supreme Court of the United States has consistently regarded as a "collateral attack" upon a final judgment. See Johnson v. State of New Jersey, 384 U.S. 719, 722, 727, 86 S.Ct. 1772, 1775, 1778, 16 L. Ed.2d 882, 886, 889 (1966). It having been determined by the highest court in this land that Gault was illegally detained in violation of due process we do not see how we can escape reaching the same decision here. We are, in effect, applying a decision such as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); or, Griffin

v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the retroactivity of which is beyond question.

However, inasmuch as counsel for both parties have assumed that this case requires a determination of "retroactivity" as if this question were open for decision under the guideline decisions of the United States Supreme Court, we approach the problem from this standpoint also. The landmark cases on "retroactivity" are: Johnson v. State of New Jersey, supra; Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[3]

In Johnson v. State of New Jersey, supra, the Supreme Court said:

> "In each instance [cases applying a new due process standard retroactively] we concluded that retroactive application was justified because the rule affected *'the very integrity of the fact-finding process'* and averted *'the clear danger of convicting the innocent.'* " (Emphasis added) 384 U.S. at 727, 86 S.Ct. at 1778, 16 L.Ed.2d at 889.

**3.** In these three cases, the Supreme Court refused to give retroactive application to its prior pronouncements of new "rules," all of which had been announced on "direct" review of state court decisions.

In *Johnson*, the principles of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), relative to custodial interrogation were given prospective application only. In *Escobedo*, the defendant's conviction had been affirmed by the Illinois Supreme Court, 28 Ill.2d 41, 190 N.E.2d 825. Certiorari was granted to review the state court judgment (375 U.S. 902, 84 S.Ct. 203, 11 L.Ed.2d 143 (1963)). Likewise in *Miranda* review of the Arizona Supreme Court's affirmance of the judgment of conviction was obtained by certiorari, 98 Ariz. 18, 401 P.2d 721 (382 U.S. 925, 86 S.Ct. 320, 15 L.Ed.2d 338 (1965)).

In *Tehan*, the prohibition of Griffin v. State of California, 380 U.S. 609, 85

S.Ct. 1229, 14 L.Ed.2d 106 (1965), against comment on a defendant's failure to testify, was held inapplicable to convictions which had become final prior to *Griffin.* Certiorari was granted in *Griffin* to review the judgment of the California Supreme Court, 60 Cal.2d 182, 32 Cal.Rptr. 24, 383 P.2d 432 (377 U.S. 989, 84 S.Ct. 1926, 12 L.Ed.2d 1043 (1964)).

The constitutional ban against a state's use of evidence procured as the result of an illegal search, announced in Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was held in *Linkletter* to apply prospectively. United States Supreme Court review of the Mapp conviction was obtained by an appeal taken from the Ohio Supreme Court's affirmance of the judgment of conviction, 170 Ohio St. 427, 166 N.E.2d 387 (364 U.S. 868, 81 S.Ct. 111, 5 L.Ed. 2d 90 (1960)).

None of these decisions to which the Supreme Court refused retroactive application was a "collateral attack" case such as *Gault*.

In Tehan v. United States ex rel. Shott, supra, the Court had said:

"The basic purpose of a trial is the determination of truth, and it is self-evident *that to deny a lawyer's help through the technical intricacies of a criminal trial* or to deny a full opportunity to appeal a conviction because the accused is poor *is* to impede that purpose and to *infect a criminal proceeding with the clear danger of convicting the innocent.*" (Emphasis added) 382 U.S. at 416, 86 S.Ct. at 465, 15 L.Ed.2d at 460.

In *Gault*, the Supreme Court of the United States said, among other things:

"Under our Constitution, *the condition of being a boy does not justify a kangaroo court.* * * * The essential difference between Gerald's case and a normal criminal case is that safeguards available to adults were discarded in Gerald's case. The summary procedure as well as the long commitment were possible because Gerald was 15 years of age instead of over 18.

"If Gerald had been over 18, he would not have been subject to Juvenile Court proceedings. For the particular offense immediately involved, the maximum punishment would have been a fine of $5 to $50, or imprisonment in jail for not more than two months. Instead, he was committed to custody for a maximum of six years.[4]

\*　\*　\*　\*　\*　\*

"*A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with*

*problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it.* The child 'requires the guiding hand of counsel at every step in the proceedings against him.' Just as in Kent v. United States, supra, 383 U.S. [541] at 561–562, 86 S.Ct. 1045, 16 L.Ed. 2d 84, we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, *so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21.*

\*　\*　\*　\*　\*　\*

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parent *must* be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." (Emphasis added) 87 S.Ct. at 1444, 1448, 1451, 18 L.Ed.2d at 546, 547, 551, 554.

A reading of the *Gault* decision does not convince this court that the adversary method of inquiry will increase the " * * * integrity of the fact-finding process." Personal experience [5] has indicated the contrary. Nor can the author agree with the conjecture expressed in *Gault* that the non-adversary proceedings engenders resentment in the child who is subjected to the

4. Under statutes pertaining to the juvenile court, all commitments to the State Industrial School are "for the term of the child's minority, unless sooner discharged by the board of directors of state institutions for juveniles." A.R.S. § 8–236, subsec. B. This court takes judicial notice that almost invariably children committed to the State Industrial

School are released under supervision of "parole officers" after approximately six months from initial commitment. As a matter of well-established custom, children are not held in the State Industrial School beyond the 18th birthday.

5. See Molloy, "Juvenile Court—A Labyrinth of Confusion for the Lawyer" (Ariz.L.Rev. Vol. 4, No. 1, Fall 1962).

"individualized treatment" of the juvenile court (87 S.Ct. at 1456, 18 L.Ed.2d at 559). Again, to the contrary, it has been the writer's experience that defendants subjected to the adversary proceedings of the adult court, who have often been convicted over their sworn testimony, carry with them more resentment than the children committed by the juvenile court to the industrial school, or other placement. But, whether this court is convinced as to the reasoning employed in *Gault* to arrive at its result is beside the point. The significant fact is that in the eyes of the Supreme Court of the United States the constitutional defects found in Arizona's juvenile court procedure seriously contaminated the integrity of the fact-finding process. That this is the view of that Court is clearly conveyed by the language of the decision, which rings with such disapproval that it approaches contempt. This carefully expressed attitude we believe makes unnecessary a consideration of the "exigencies"[6] presented by the possibility of the mass release of the other children committed to Fort Grant.[7]

Even if such "exigencies" be considered, however, we find the situation much less desperate than expressed by the State in its brief to this court. Certainly, the problems of proof presented by the necessity of holding a *Gault* hearing as to all inmates of our Industrial School will not be as difficult as in the case of the felons released in Florida by the *Gideon* decision.[8]

As we have noted (see n. 4, supra), only months rather than years will normally have expired between the order of commitment to Fort Grant and the hearing required by the *Gault* decision. Mass releases, if they occur, may tax but should not exceed the capacity of the child-caring,

law-enforcement and judicial facilities of this state. And at this time, we do not determine whether "Gideon's trumpet" has blown again. We respond only to the particular petition before us and hold that the possibility that other children may be similarly detained is no bar to an order that these two petitioners be released from a custody determined by the Supreme Court of the United States to be illegal.

Petitioners' counsel is directed to prepare an appropriate writ of habeas corpus directing the immediate release of the petitioners from the custody of the Superintendent of the State Industrial School.

HATHAWAY, C. J., and KRUCKER, J., concur.

---

6. Quote from Johnson v. State of New Jersey, supra, 384 U.S. at 727, 86 S.Ct. at 1777, 16 L.Ed.8d at 888.

7. "Fort Grant" is the commonly used appellation for Arizona's Industrial School.

8. There is a statement in "Gideon's Trumpet," by Anthony Lewis, that "By January 1, 1964 [less than ten months

after the rendition of *Gideon*], nine hundred seventy-six prisoners had been released outright from Florida penitentiaries, the authorities feeling that they could not be successfully retried. Another five hundred were back in the courts, and petitions from hundreds more were awaiting consideration." (p. 205.)