401 P.2d 716

**STATE of Arizona, Appellee,**

v.

**Ernest Arthur MIRANDA, Appellant.**

**No. 1397.**

Supreme Court of Arizona.

En Banc.

April 22, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., Allen L. Feinstein, Phoenix, of counsel, for appellee.

Alvin Moore, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Ernest Arthur Miranda was charged with the crime of robbery. From the judg-

ment of guilty and the sentence thereon he appeals.

On the evening of November 27, 1962, the complaining witness, a young woman employed by the First National Bank of Arizona, attended a school conducted by the bank for its employees. She left the school about 8:30 p. m., went to her automobile at a nearby parking lot and was attempting to start her car when the defendant approached from the driver's side and opened the door. As he opened the door, he put his hand over the complaining witness's mouth and told her to move over. He then entered the car, producing an open knife which he pressed against her side. Defendant started the automobile and drove it into an alley where he shut off the ignition and the lights. A struggle took place during the course of which the complaining witness pleaded with defendant and finally gave him eight dollars and some small change, all the money she had in her wallet.

In March of 1963, the complaining witness was requested to come to the police station in the City of Phoenix. There, she was shown the defendant and three others in a lineup. At that time she identified defendant as the individual who had assaulted and robbed her the evening of November 27, 1962. Two police officers then talked to the defendant and he confessed to the robbery, admitting that he initially intended to rape the complaining

witness when he entered her car. Defendant likewise confessed to the crimes of kidnapping and rape as disclosed in State v. Miranda, Cause No. 1394, 98 Ariz. 18, 401 P.2d 721 (decided this date), hereinafter referred to as the companion case.

After defendant's arraignment in the superior court, the State moved to consolidate this cause for trial with the companion case. The motion for consolidation was granted. One day prior to the trial date, defense counsel filed a notice of intention to prove insanity, which notice included both the claim of insanity at the time of the commission of the offense and insanity at the time of the trial. On May 14, 1963, the morning originally fixed for trial, on motion of defendant, the court appointed two disinterested, qualified experts to examine defendant as to his present mental condition pursuant to Rule 250, Rules of Criminal Procedure, 17 A.R.S. The trial date was vacated without objection and reset for June 19, 1963. On June 18, 1963, a hearing was held to determine the defendant's present mental condition. The court found that defendant was able to understand the nature of the proceedings and to assist in his defense and directed that the case proceed to trial. The court then ordered that this cause and the companion case with which it had been previously consolidated be separately tried.

■ The defendant first urges that the complaining witness should not have been

permitted to testify to her opinion as to the sanity of the defendant at the time the offense was committed because she was not qualified as an expert witness. We have previously held that the opinion of a lay witness is admissible where sanity is an issue, State v. Coey, 82 Ariz. 133, 309 P.2d 260. The defendant placed his sanity in issue by his notice of intention to introduce evidence to establish that he was insane at the time of the commission of the offense and it was not error for the complaining witness to give her opinion of the defendant's sanity at the time of the offense.

■ During the course of the trial, this incident occurred of which the defendant complains:

"[PROSECUTING ATTORNEY]: [Complaining witness], do you know how much money was given to the defendant, or did he get from you?

"A Approximately eight dollars in bills, and I don't know about the change.

"Q Did you give it to him voluntarily?

"A Yes.

"[DEFENSE ATTORNEY]: We object to this line of questioning, leading and suggestive.

"THE COURT: What is the question?

"[PROSECUTING ATTORNEY]: I asked her if she gave it to him voluntarily.

"A I just gave it to him because I was afraid.

"[DEFENSE ATTORNEY]: We ask that be stricken as not responsive to the question.

"THE COURT: The objection will be overruled."

Defendant argues that his cause was damaged by the unsolicited answer of the witness but we conclude that it is well within the range of the trial court's discretion in not ordering it stricken. The testimony was plainly relevant as an explanation of the witness's previous answer and material to establish an essential element of the crime of robbery.

During the course of the cross-examination, this further incident occurred:

"Q You work for the main office; where do you live, [complaining witness]?

"[PROSECUTING ATTORNEY]: I object unless Counsel qualifies the date. Does he mean now or at that time? If he means now, we object to it as being immaterial and ask if we may approach the bench.

"THE COURT: Very well, Gentlemen."

**16**

"(Thereupon the following proceedings were had at the bench out of the hearing of the jury.)

"[PROSECUTING ATTORNEY]: If the Court please, the basis of the objection is that [complaining witness] has moved since the date of this incident three times. She's had her telephone removed and now has a new number unlisted with the phone company, and that is the difficulty I had in locating her.

"The reason for that is that she has been contacted by somebody, she told me the name of the person who first contacted her, but the person that she knows is friendly with the defendant. She has been contacted by this person and she's afraid that should it turn out that the defendant for some reason is acquitted or is later sent out on bond, she's afraid of bodily harm due to this. We have no objection to her testifying as to her address at the time of this occurrence, but we strongly urge the Court that she shouldn't have to divulge her present address.

"THE COURT: I will sustain the objection as to the present address because of the unusual circumstances here that have been brought to my attention.

"[DEFENSE ATTORNEY]: The circumstances haven't anything to do with the law.

"THE COURT: What is your theory?

"[DEFENSE ATTORNEY]: I am trying to impeach this witness. I am attacking her credibility. I want to know where she lives.

"THE COURT: And that attacks her credibility?

"[DEFENSE ATTORNEY]: The kind of story she tells to the jury.

"THE COURT: I will sustain the objection because of the unusual nature of the circumstances."

█ Concededly counsel should have wide latitude in cross-examination but we do not find prejudicial error in this ruling. If the testimony had been elicited as stated by the prosecuting attorney, the more likely tendency would have been to prejudice the jury against defendant. Indeed, the probative force of the proposed evidence as attacking the witness's credibility is so slight that the failure to permit examination on this point could not have affected the outcome of the case.

██ The defendant assigns as error the introduction into evidence of testimony that the complaining witness identified the defendant in a police lineup. It is argued that this has the same prejudicial effect as testimony that defendant was identified through a "mug shot." We do not think so.

"Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial * * * but as independent evidence of identity. * * * [E]vidence of an extra-judicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. * * * [T]he principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination." People v. Gould, 54 Cal. 2d 621, 7 Cal.Rptr. 273, 275, 354 P.2d 865, 867.

Plainly the evidence was relevant. Nor was it objectionable as the equivalent of a "mug shot" since it does not imply a prior criminal record.

 The State also introduced into evidence a photograph of the lineup. The photograph is of four persons, all of somewhat similar stature, all dark haired and of swarthy complexion. Testimony established that this was an exact reproduction of the lineup existing at the time the complaining witness identified the defendant. We can think of no reason why the photograph should not have been admitted into evidence. It was relevant as it tended to establish the reliability of this particular police lineup as a means of positive identification.

 The defendant urges that the county attorney was guilty of improper conduct in arguing to the jury an admission of the defendant that he intended to rape the complaining witness when he entered the car. We take it to be the law that arguments may embrace any relevant fact properly admitted in evidence. The defendant's purpose in entering the complaining witness's vehicle was relevant to explain his subsequent conduct toward her. As an admission, it was admissible on the same basis as a confession, State v. Owen, 96 Ariz. 274, 394 P.2d 206. Defendant does not contend that the admission of his confession was error. Defendant's confession was made under the circumstance and in the course of the investigation embracing both this case and the companion case. Our conclusions in Cause No. 1394 are controlling here. Defendant understood his rights and knew that his statements might be used against him. There is no evidence whatsoever to indicate that they were involuntary.

 Defendant argues that the evidence of his intent to commit rape was highly inflammatory and we have no doubt but that it was. But since it explained the events which culminated in the robbery it

was properly the subject of comment in the arguments.

Defendant urges that it was error to deny his motion to dismiss for the reason that he was not brought to trial within the sixty-day period required by Rule 236, Rules of Criminal Procedure, 17 A.R.S. This contention was made and answered in the companion case and our conclusions here that it was not error are based upon the reasons stated there.

In the companion case, the defendant was given two sentences of twenty to thirty years, both sentences to run concurrently. In this case the trial judge, who presided over both trials, sentenced the defendant to an additional twenty to twenty-five years, the sentence to run consecutively to the sentence in the kidnapping and rape case. We do not find the sentence excessive.

The record shows that the defendant was committed to the custody of juvenile authorities on various charges, including burglary, attempted rape and assault. His record further shows that he was arrested in California on suspicions of armed robbery and that he has a conviction for violation of the Dyer Act. We would be loath to disturb the trial court's judgment under these circumstances. See State v. Morris, 97 Ariz. 417, 401 P.2d 147 (decided April 14, 1965).

The record has been examined in the light of the defendant's argument that the verdict is contrary to the evidence. When considered strongest in favor of the verdict, State v. Hernandez, 96 Ariz. 28, 391 P.2d 586, it establishes that the defendant forcibly entered the complaining witness's car at night with the intent to commit rape and at knife point compelled her to accompany him to an alley where, after a struggle, she gave him what money she had because she was placed in fear.

Judgment affirmed.

LOCKWOOD, C. J., and BERNSTEIN, UDALL, and McFARLAND, JJ., concurring.