428 P.2d 1004

The STATE of Arizona, Appellee,

v.

Alfred Louis CHANEY, Appellant.

No. 2 CA–CR 65.

Court of Appeals of Arizona.

June 12, 1967.

Darrell F. Smith, Atty. Gen., Carl Waag, Gary K. Nelson, Asst. Attys. Gen., Phoenix, William J. Schafer, III, County Atty., Pima County, Tucson, for appellee.

Robert J. Hirsh, Tucson, for appellant.

MOLLOY, Judge.

The defendant, Chaney, along with a co-defendant, Mayes, was convicted of two counts of burglary, second degree. The defendant, Chaney, brings this appeal raising numerous assertions of error.

The charges in this action were brought under A.R.S. § 13–302, subsec. A which defines a "burglary" as the entry into any building " * * * with intent to commit grand or petty theft, or any felony * *." In this case, the charges revolve around entries into two retail stores, in the daytime, the allegation being that when the defendant so entered, it was with the intent to commit theft.

■ The proof, viewed favorably to support the verdicts rendered below, State v. Narten, 99 Ariz. 116, 407 P.2d 81 (1965), cert. denied 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966), establishes that the defendant, together with his codefendant, entered a retail nursery establishment on October 7, 1965, and bought some insecticide. While the two were at the cash register, paying for the purchase, the defendant dropped a coin on the floor, which coin rolled to a position where the store attendant was in the best position to pick it up. In doing so, the store attendant turned his back to an open cash register. As the defendants were leaving the store, the store attendant noticed there was at least one twenty-dollar bill missing from the cash register and he called the police, who located the defendant and Mayes in their automobile a short distance from the store. They were returned to the store where the store attendant identified them as being the two persons who had been in the store previously to make the insecticide purchase. At the trial, the store owner testified there was a cash shortage of $38 from the cash register on the occasion.

The other count of the information pertains to an entry into a bait and tackle shop on October 26, 1965. On this occasion, the defendant Chaney entered the store by himself and, while paying for a fifteen-cent purchase of lead weights, dropped a penny on the floor which rolled into a position so that it was appropriate for the store attendant to pick it up. As the store attendant turned away from the open cash register, he heard a peculiar sound in the cash register, turned around and saw the codefendant Mayes with his hand in the cash register removing the five-dollar bills. The store owner reached forward and grabbed Mayes by the arm, making him release the bills, whereupon Mayes departed hurriedly from the store. The defendant walked out of the store while the storekeeper was calling the police. The police apprehended the two defendants and a third person at a grocery store not too far distant. When apprehended Mayes was seated in an automobile containing approximately seven small paper bags containing small amounts of merchandise purchased from various stores. In the grocery store at the time of their arrest, were the defendant and the owner of the automobile in which these three individuals were riding. The defendant had just made a small purchase at the cash register and had dropped a penny on the floor which he was contending to the clerk had rolled behind the counter. The store attendant had looked on the floor but could not see a penny and refused to hunt for it.

In addition to these incidents, there was testimony that on that same day the defend-

ant had gone into a greeting card store and bought a fifteen-cent greeting card. While the defendant was paying for his purchase with a dollar-bill, he dropped a penny on the floor as the sale was being rung up. When the store attendant said, "never mind," the defendant picked up the penny himself and tendered it to the storekeeper to pay the sales tax on his purchase, Mayes was identified as a person waiting in the car used by the defendant on this occasion, parked in the lot in front of the greeting card store.

The defendant did not take the stand during the trial but his codefendant, Mayes, did take the stand. Mayes testified that he and the defendant were in the nursery on October 6, 1965, to make a small purchase of insecticide, but denied that any coin was dropped on the occasion in question or that any monies were taken from the cash register. Mayes also testified that he was with the defendant when he went to the card shop and bait and tackle shop, but that he did not leave the car on either occasion. Additional facts will be outlined as the various assertions of error are discussed.

The defendant complains of the admissions in evidence of a police report containing a description of the activities of a police detective in investigating the incident at the bait and tackle store. A portion of this report had been read in evidence at the instigation of the defendant's counsel in the cross-examination of the detective who had prepared the report. In his direct testimony, this detective had stated that Mr. Rudd, the proprietor of the bait and tackle shop, had described the height of the two negro males who had entered his shop as being approximately 5'8" or 5'9" as to the taller one, and a lesser height as to the other. The portion of the police report read into evidence on cross-examination contained a statement that Mr. Rudd had described these persons as being approximately 6' tall and 5'8" tall, respectively.

Thereafter, over the objection of the defendants that the balance of the report did not relate to the portion admitted, the entire police report was read to the jury and the report itself admitted in evidence. Contained in this report was a statement as follows:

"Officer Bostick brought Mr. Rudd [proprietor of the bait and tackle shop] to the 7-11 store [where defendants were arrested] where he identified subject CHANEY as being the suspect who had dropped the penny behind the counter and *also the suspect that had stolen money from his cash register approx., two weeks ago.*"

(Emphasis added.)

During the trial, the State attempted to have admitted in evidence Mr. Rudd's testimony pertaining to the incident of "two weeks ago." This testimony was generally to the effect that Mr. Rudd had missed some money from his cash register immediately after the defendant Chaney had been in his store. There was no testimony about the dropping of a coin on this occasion and there was no direct evidence, other than the fact that the money was missing, that Chaney had committed a theft on that occasion. The trial court refused to permit the testimony in evidence on the basis that the testimony was " * * * pretty slim proof of an offense without corroboration."

There was no request made by the defendant for an instruction to the jury to disregard this accusation of another theft and none was given in this regard. In its brief, the State admits that the admission of the remainder of the police report was error, in that it did not in any way qualify or explain the portion of the report which had been admitted in evidence. See 7 Wigmore, Evidence § 2113, p. 524 (3d ed. 1940).

However, the State argues that the admission of this evidence was not prejudicial, when the error is viewed in the light of the entire record. The State relies upon State v. Dutton, 83 Ariz. 193, 318 P.2d 667 (1957). In *Dutton,* our Supreme Court held that trial court erroneously admitted in evidence testimony that the accused was driving a stolen car on the occasion when he was accused of committing a robbery. However,

the Supreme Court held that substantial justice had been done in the case and refused to reverse, citing Article 6, § 22, of the Constitution of the State of Arizona, A.R.S. (now Article 6, § 27). The Court said:

"In applying this constitutional provision our prior decisions, particularly in Turley v. State, 48 Ariz. 61, 59 P.2d 312 and State v. Singleton, 66 Ariz. 49, at page 66, 182 P.2d 920, at page 930, have laid down this test: had the error pointed out not been committed is there reasonable probability that the verdict might have been different? In answering this question, the members of this court must necessarily put themselves, as nearly as possible, in the position of the jury in order to determine whether, as reasonable men, the error committed probably affected their verdict."

83 Ariz. at 200, 318 P.2d at 671.

■ If this test of prejudicial error were still the prevalent one in this jurisdiction, we would be inclined to affirm the conviction here, despite the errors committed by the trial court, as outlined in this decision. However, we believe there has been a shift in the view of our Supreme Court in this area of what is prejudicial error, particularly when it involves the admission in evidence of other criminal offenses. State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964);[1] State v. Gortarez, 96 Ariz. 206, 393 P.2d 670 (1964); and State v. Jacobs, 94 Ariz. 209, 382 P.2d 683 (1963), are four decisions subsequent to *Dutton* which impel us to the view that under the standards established by our Supreme Court reversible error was committed in this action by the admission of the statement in the police report of the alleged prior theft.

We proceed to answer other contentions made on appeal, which are of such nature as may arise on a new trial. Defendant alleges that the trial court erred in refusing to charge the jury as follows:

"Before the jury can consider whether or not the defendant Chaney is guilty of the crime he is charged with, it is mandatory that the jury find as a fact, beyond a reasonable doubt, that some one or more persons committed the burglaries charged and that the some one or more persons included the defendant, Alfred Chaney, or that he aided or abetted him or them."

The trial judge properly instructed the jury as to the elements of the crime charged and the burden of the State to prove guilt beyond a reasonable doubt. The defendant did not object to the giving of these instructions. The trial judge instructed the jury, *inter alia:*

"If any element or ingredient necessary to constitute the crime charged is not or has not been established beyond a reasonable doubt, the defendant is entitled to an acquittal.

"You are instructed that in order to convict the defendant as an aider and an abetter there must be proof that not only did he aid the actor but that at the same time he shared the criminal intent of him or them who actually committed the offense."

■ Since the instructions given cover the contents of the rejected instruction, the court did not err in refusing to charge the jury as requested by defendant. State v. Sorrell, 95 Ariz. 220, 225, 388 P.2d 429 (1964); State v. Holliday, 92 Ariz. 168, 375 P.2d 370 (1962).

Defendant alleges that error was committed by the trial court in denying a motion for mistrial, which motion was based on the refusal of two police officers to discuss the case with defendant's counsel prior to their taking the witness stand. The defendant contends that counsel for the prose-

1. In *Gallagher*, it was held to be "reversible error" (97 Ariz. at 7, 396 P.2d 241) for a witness to volunteer that the defendant had been asked if he " ' * * * had ever been in jail, * * * ' " though there was no indication of any response to the question.

cution, either expressly or impliedly, instructed the two policemen not to discuss the case with defense counsel.

The trial court permitted an *in camera* examination of the two police officers as to their refusal to confer with defense counsel. From this examination it is clear that, while State's counsel did not categorically instruct the police officers not to discuss the case with defense counsel, he actively discouraged it.

Officer Krieger, one of the witnesses in question, testified as follows:

"Q Can you tell me specifically what Mr. Weiss [prosecuting attorney] told you would lead you to believe that you were not allowed to talk to defense counsel?

"A Well, like I say, I don't recall the exact words that he used. It was something to the effect that I would rather that you did not."

■ Our Supreme Court has acknowledged a general rule that:

"* * * that a defendant and his counsel have a right to talk with any witness having knowledge of matters which might be beneficial or detrimental to him, including persons in custody."

State v. Wise, 101 Ariz. 315, 317, 419 P. 2d 342, 344 (1966).

■ It is inconsistent with the role of a prosecuting attorney to discourage witnesses from talking with defense counsel. People v. Mitchell, 16 Ill.App.2d 189, 147 N.E.2d 883, 885 (1958); Walker v. Superior Court, 155 Cal.App.2d ¡134, 317 P.2d 130, 134 (1957); Wisniewski v. State, 51 Del. 84, 138 A.2d 333, 338 (1957); A. B. A. Canons of Professional Ethics No. 5.

Whether a witness may refuse to talk to the defendant or his counsel is another matter. The preponderance of authorities seems to indicate that the court should not force a witness to discuss the case with the defense. Byrnes v. United States, 327 F.2d 825 (9th Cir. 1964), (cited in *Wise*, 101 Ariz. at 317); State v. Lampp, 155 So.2d 10 (Fla.1963); People v. Mitchell, 16 Ill. App.2d 189, 147 N.E.2d 883, 885 (1958);

Walker v. Superior Court, 155 Cal.App.2d 134, 317 P.2d 130, 134 (1957); 23 C.J.S. Criminal Law § 958, p. 818; but see Wisniewski v. State, 51 Del. 84, 138 A.2d 333, 338 (1957) (dictum).

■■ Though State's counsel was guilty of improper conduct in discouraging police officers from discussing the case with the defendant's attorney, we see no prejudice. Instead of moving the court to require the prosecuting attorney to cease discouraging witnesses from conversing with defense counsel about the case, as Walker v. Superior Court, supra, indicates would be proper, or moving the court to order the witnesses to discuss the case with defense counsel, as Wisniewski v. State, supra, indicates would be proper, the defense moved for a mistrial. Such a motion clearly asks for more than that which the situation demanded:

"* * * the granting of a mistrial is an extreme remedy, it may and should be declared only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it one of the parties cannot have a fair trial, or where further proceedings would be productive of great hardship or manifest injustice * * *." 88 C.J.S. Trial § 36(b), pp. 96–97.

The defendant has failed to show that because of being unable to discuss the case with the State's witnesses, he was denied a fair trial. The witnesses concerned took the stand and were thoroughly cross-examined by the defendant's counsel, both in the presence of and out of the presence of the jury. No continuance was requested to meet any testimony adduced from them nor is there even a suggestion made here that the defense was surprised by their testimony. Accordingly, we see no error as to which the defendant has standing to complain. State v. Wise, supra; Wisniewski v. State, supra.

The defendant alleges that the trial court erred in denying his motion challenging the jury panel. Defendant predicated his challenge to the panel on statements made in a

written motion as to which no written response was made by the State. This pleading stated, *inter alia*:

"* * * these particular jurors called to appear for this particular case have not been summoned in accordance with A.R.S. 21–331, but instead have been called by telephone."

The defendant, an indigent negro, maintained he was prejudiced in being tried by jurors called in this manner, since negroes, he contends, are generally in a lower economic category than persons of other ethnic origins and hence are less apt to being called for a particular jury trial by telephone. The defendant did not produce any proof whatsoever that negroes were not on the entire jury panel from which this particular jury was called, and the extent of the showing that there were no negroes on this particular trial panel consisted in the court noting for the record that there appeared to be no negroes who had reported for jury duty in that courtroom on that day. Our Supreme Court in State v. Miller, 71 Ariz. 140, 224 P.2d 205 (1950), expressly approved the calling of jurors by telephone in the manner we assume was done in the present case.

■ Courts may not assume intentional discrimination merely because such is asserted. It is incumbent upon the defendant to affirmatively show facts from which it may be reasonably inferred that discrimination occurred. Thiel v. Southern Pacific Company, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 827, 13 L.Ed.2d 759 (1965); State v. Green, 425 P.2d 913 (Wash.1967). In the case at bar, there is a total lack of proof that the bailiff, in drawing by lot from the entire jury panel, systematically, or otherwise, excluded either negroes or indigents. The widespread use of telephones in our modern society prevents us from assuming that negroes are generally without telephones in their homes and/or are generally not available to be contacted by telephone through an employer or a neighbor.

The fact that no negroes were called for this particular trial, by itself, is insufficient proof of discrimination. State v. Green, supra; Thiel v. Southern Pacific Company, supra. We hold that the trial judge did not err in denying defendant's challenge to the jury panel.

The defendant has called our attention to three portions in the trial transcript where cross-examination was denied to the defendant on objections of the State, and in each of these three instances we are of the opinion that the trial court erred. As to whether such errors would be reversible, we do not decide, in view of our belief that reversal is mandated for other reasons.

■ The three instances of erroneous limitation of cross-examination we find to be: (1) the refusal to permit defense counsel to ask one of the police witnesses how many times he had discussed the case with the prosecuting attorney prior to the trial and whether this witness was willing to discuss his testimony with the defendant's counsel prior to the trial; (2) the refusal to permit the defendant's counsel to pursue further an inquiry as to whether the police officer noticed or observed that Mr. Rudd, the proprietor of the bait and tackle shop, was hesitant in identifying the codefendant, Mayes, when he first saw him in front of the 7–11 store; and (3) the refusal to permit defense counsel to pursue an inquiry of a police officer as to the present whereabouts of a third person who was with the defendants at the time of their arrest at the 7–11 store.

■ This jurisdiction is committed to the principle that there should be wide latitude allowed on cross-examination. State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120 (1960); Spector v. Spector, 94 Ariz. 175, 184, 382 P.2d 659 (1963). In each of the instances delineated above, the cross-examination was directed at showing bias or prejudice on the part of the witness and/or was a probing effort to test the truth of statements made by the witness. While such questions can undoubtedly be pursued beyond the point of any assistance

to the fact-finder, we do not believe that that point was exceeded in these instances.

 The defendant further complains that a police officer was permitted to testify as to the positive identification of Mayes by the bait and tackle shop storekeeper at the time of the arrest of the defendants. The trial court admitted this testimony on the basis that the defendant was present at the time of the identification. The presence of a party when a statement is made does not automatically render such statement an exception to the hearsay rule. State v. Coey, 82 Ariz. 133, 309 P.2d 260 (1957). However, this state is committed to the doctrine that an identification of an accused at a time relatively soon after the commission of an offense is admissible as substantive evidence of such identification, providing that the identifier is available at the time of trial for cross-examination. State v. Taylor, 99 Ariz. 151, 407 P.2d 106 (1965); State v. Miranda, 98 Ariz. 11, 401 P.2d 716 (1965).

The defendant contends these cases are distinguishable in that the party identified was the accused in the criminal action while here the party identified was a codefendant, Mayes. If the reason for the admission of such testimony was on the theory of an implied admission, arising out of the silence of the accused, this distinguishing feature might be critical. While an admission-by-silence is one possible ground for admitting in evidence such an identification, see 4 Wigmore, Evidence § 1139, p. 210 (3d ed. 1940), we do not believe this is the theory espoused by our Supreme Court in the *Taylor* and *Miranda* decisions. In *Miranda,* our Supreme Court cited and quoted with approval from the California Supreme Court decision of People v. Gould, 54 Cal.2d 621, 7 Cal.Rptr. 273, 275, 354 P.2d 865, 867 (1960), as follows:

> " 'Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial * * * but as independent evidence of identity. * * * [E]vidence of an extra-judicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. * * * [T]he principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination.' "

98 Ariz. at 17, 401 P.2d at 719.

 We find nothing in the *Gould* decision to indicate that an admission by the opposing party is the rationale of permitting this type of evidence to come before the trier of fact. If such testimony is " * * * independent evidence of identity," then it should be good not only against the person identified, but against those who might be collaterally affected by the identification, such as a codefendant, which is the situation presented here. We see no error in the admission of this testimony.

The defendant complains of the admission into evidence of testimony in regard to the dropping of coins by the defendant at the greeting card and 7–11 stores and the testimony of the police officers as to the finding of the paper bags containing the small purchases in the defendants' car at the time of their arrest.

 Ordinarily, evidence of other crimes is not admissible in a criminal trial. State v. Thomas, 71 Ariz. 423, 229 P.2d 246 (1951). However, the well-established exception to this rule is:

> " * * * evidence of other crimes is competent to prove the specific crime charged when it tends to establish motive, intent, the absence of mistake or accident, identity, a scheme or plan common to the commission of two or more crimes so related to each other that proof of one tends to establish the other."

State v. Akins, 94 Ariz. 263, 383 P.2d 180 (1963).

In determining whether testimony tending to prove other offenses should be admitted, some degree of discretion is reposed in the trial judge. State v. Waits, 1 Ariz.App. 463, 404 P.2d 729 (1965). Factors to be weighed by the trial court are (1) the degree of proof of the other "bad acts," State v. Waits, supra, and (2) the relative amount of prejudice to the defendant that would be caused by the admission of the evidence as opposed to its probative value in the trial of the case at hand. McCormick on Evidence, pp. 319–321 (1954); Powell v. United States, 347 F.2d 156, 158 (9th Cir. 1965).

In this action, one of the critical elements of the crime which had to be proved by the State if a conviction was to result was that the defendants, at the time of entering these retail stores, intended to commit a theft within the store. State v. Owen, 94 Ariz. 354, 385 P.2d 227 (1963). Proof of a state of mind is seldom possible by direct evidence and must usually be established by circumstantial evidence having some reasonable bearing upon the *factum probandum*. 29 Am.Jur.2d Evidence § 355, pp. 404–405. In this case, the proof of the particular circumstances admitted in evidence over objection is clear. There was a positive identification of the defendant as being the person who had dropped the coins in the other two stores and of being in the company of the persons in the car in which the bags were found. The fact that the paper bags were in the car is not disputed. There is little collateral prejudice resulting from the admission of this evidence in that there is no direct inference that any independent crimes were committed on other occasions. As the defendant has stated in his brief:

"Certainly evidence showing paper bags in the appellant's car indicating that appellant had made some other purchases that day doesn't even create a mere suspicion of a bad act. It only creates a prejudicial inference that appellant had been engaged in illicit activity all over town."

This latter "prejudicial inference" is one that shed some light upon a *factum probandum* in this action. Evidence that is clearly relevant and otherwise competent is admissible no matter how "prejudicial." 2 Wigmore, Evidence § 305, p. 205 (3d ed. 1940).

We distinguish State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843 (1952), on the ground that the "bad acts" in that case constituted independent crimes and the evidentiary value in the particular case was less poignant. *Kuhnley* held that it was error to admit into evidence, in a receiving stolen property case, some seventy-three items of miscellaneous personal property, such as six watches, twenty clocks, et cetera, with no identification other than that they were seized at defendant's home. In *Kuhnley* there is one additional inference which must be indulged in in order for the presence of these other items to be relevant, i. e., that they were stolen. Of this there was no substantial proof in the *Kuhnley* case. Here, there is no suggestion that the items in the paper bags were stolen; the very nature of the items and the manner of their wrappings indicate that the defendants had been involved in various recent purchases of small items of merchandise. In and of itself this inference is not damaging nor prejudicial, but to the extent that a "shopping tour" is some circumstantial evidence tending to eliminate a spur-of-the-moment decision to commit theft, it has necessary relevancy.

As to the dropping of the coins in the other stores, again the prejudicial effect of such testimony insofar as showing an independent crime is at a minimum and the incidents do have some bearing as to showing a common plan or scheme. We hold that the trial court did not err in admitting this evidence.

Lastly, the defendant complains that he was not afforded a separate trial of the two counts contained in this information. Rule 128, Rules of Criminal Procedure, 17 A.R.S., permits the joinder in the same information and a consolidated trial of offenses which are " * * * connected

together in their commission * * *" or are " * * * offenses of the same class of crimes or offenses * * *" The offenses joined here for trial fit both categories. Moreover, the offenses are sufficiently connected so that we see no possible prejudice to the defendant in trying them together. Even if these two counts had been tried separately, evidence of the one offense would be admissible under a theory of a common scheme or plan. State v. Akins, supra.

For the reasons stated herein, judgment of conviction as to the defendant is set aside and this action is remanded to the superior court for a new trial.

HATHAWAY, C. J., and KRUCKER, J., concur.