512 P.2d 1221

STATE of Arizona, Appellee,

v.

Louis Carroll BUSH, Appellant.

No. 2441.

Supreme Court of Arizona,
En Banc.

Aug. 6, 1973.

Rehearing Denied Sept. 18, 1973.

Gary K. Nelson, Atty. Gen., by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Nelson & Moran, by Thomas A. Moran, Yuma, for appellant.

HAYS, Chief Justice.

Defendant, Louis Carroll Bush, was tried by a jury and convicted of robbery while armed with a deadly weapon for the March, 1971, robbery of George Mitchell in Yuma, Arizona. On September 21, 1971, Bush was sentenced to prison for from twelve years to life.

The defendant and the victim had known one another for about a month before the robbery and had spent the afternoon of the robbery drinking together. They parted for awhile and met again around a campfire in the railroad yards. At this time the victim, George Mitchell, was thrown out of camp, beaten, cut with a knife, and robbed. A Southern Pacific conductor found the injured man and reported his discovery to a railroad police officer.

Defendant Bush asserts various grounds for reversal on appeal. We will discuss the facts in more detail as we consider each allegation of error.

Bush's first three allegations of error are interrelated and will be considered together:

A. Did the Court err in proceeding with the trial with defense counsel, after defendant had stated in open court that he no longer wanted said counsel to advise him or to represent him as a defense lawyer?

B. Did the Court err in appointing Mr. Moran as Defendant's attorney and ordering defense counsel to proceed immediately to trial over the objection of defense counsel?

C. Did the learned trial court err in continuing the trial of the case before a jury which had witnessed the events leading to the defendant's walking out of the courtroom?

A review of the record does not support Bush's assertions in his first three allegations of error. John R. Hart, a lawyer, was appointed and represented the appellant at the preliminary hearing. Bush was dissatisfied with his attorney and told the court he didn't want Hart to represent him. At the arraignment, Hart agreed that it had been difficult to work with the defendant and asked to be allowed to withdraw. Bush was adamant that he wanted to proceed without counsel while he tried to get an attorney through the Arizona Civil Liberties Union or through the N.A.A.C.P. Hart was permitted to withdraw. The court assured Bush that, if at any time he wanted a lawyer, he could send word to the court by letter or through the jailer, and the judge would appoint another lawyer. On April 28, 1971, the court again pointed out the importance of having an attorney appointed to act as his advisor. Thomas Moran was appointed to advise Bush and appeared in court with Bush on numerous preliminary motions from May 6 through September 3, 1971.

On September 8, 1971, Bush stated that he was ready to proceed and introduced Moran as his advisor. He told the court that because his constitutional claims had been denied, he could not get a fair trial at the state level and moved that the case be

transferred to federal court. When the motion was denied, Bush said:

MR. BUSH: Mr. Moran, you is fired. You is fired. I can't get a fair and impartial trial at this level of the proceedings.

R.T. I, p. 3.

With that, Bush walked out of court and returned to the county jail. After Bush had left the courtroom, Moran recommended that he be appointed as Bush's attorney and the court appointed Moran to represent the defendant in all procedures in which the defendant himself was absent from the courtroom.

The court reconvened at the Holding Tank at the Yuma County Jail. At the jail, Bush said he would resist being brought back to court any way he could and repeated his belief that he could not receive a fair trial on the state level. The defendant claimed the court did not have the power to appoint Moran as his attorney. Mr. Moran moved for a continuance as follows:

MR. MORAN: Your Honor, I move that the Cause against Mr. Bush be continued until such time as we can have further time to research and to consult with the defendant concerning the fact that he refuses to be present during this trial. And for the further reason that Mr. Bush has indicated his desire that I not represent him; and that in the presence of the jury panel, he voiced out loud that his attorney, myself, was fired. And for the further reason that it is the opinion of counsel that he cannot put up any effective defense without Mr. Bush's presence in the courtroom to testify, and to deny and testify to all of these allegations that have been set forth in the complaint or the information of the County Attorney. That's my motion.

R.T. I, p. 35.

The court denied the motion for a continuance and stressed again that the defendant would be permitted to attend the trial at any time he would be willing to conduct himself properly in the courtroom.

At the time the defendant walked out of the court, the jury panel was being selected. After he left, a recess was ordered. When the jury panel returned to the courtroom after the judge talked with the defendant at the jail, the court questioned the jury to determine if they would be influenced in any way by the defendant's absence.

THE COURT: . . .

Now, ladies and gentlemen, you have served before, and the question of what is known legally as a trial in absencia [sic] exists in this case. The defendant is not present at the present time, and that is not a factor, that is to have no effect on the trial at all. Would any of you be in any way influenced, either for or against the defendant, or for or against the State if this trial proceeds to a conclusion without the personal presence of the defendant? . . .

R.T. I, p. 41.

Moran then questioned the panel to see if the morning walk-out or the defendant's absence would affect their judgment. The members of the panel indicated that they felt they could be fair and impartial and would not be influenced by Bush's absence or by his statement that he could not get a fair trial.

On the basis of the above facts, considered in their totality, we hold that the trial court did not err in proceeding with the trial, with Moran as the attorney, before a jury from the original panel, and against the wishes of the defendant. If there was prejudice to the defendant because the jury witnessed his statement and departure from the courtroom, it was brought on by his own actions. It is not clear from the record whether those actions in fact would have elicited sympathy for or hostility to the defendant. In any event, the matter was peculiarly within the knowledge of the trial judge, and, unless we find a clear abuse of discretion, we will not reverse. State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961). With respect to appointing Mr. Moran to represent

Bush, the court selected the most qualified attorney under the circumstances: Moran acted as Bush's advisor for months, asked to be appointed as his attorney when Bush left the courtroom, and was clearly more familiar with the defendant and his case than any other attorney.

■ With regard to the denial of the motion for a continuance, it is well settled in this state that a motion for a continuance is within the sound discretion of the trial court. Weston v. Denny, 14 Ariz. App. 1, 480 P.2d 24 (1971). Defendant in the instant case first insisted upon and then refused to represent himself. He fired the first court-appointed attorney and generally seemed satisfied with Moran as an "advisor." Moran came to court on the scheduled day of the trial to "assist" Bush in his defense. Reviewing the record, we fail to see that the defendant was prejudiced by his attorney's having to proceed on the scheduled trial date.

   D.  Was the Defendant denied his Constitutional Rights when he was refused a phone call for thirty days after being arrested and later on to see persons in order to prepare his defense?

■ Bush cites no authority to support his allegation of error and the only evidence that he was denied phone calls is his bare assertion that this was so. We cannot assume deprivation of a constitutional right merely because it is asserted. It is incumbent upon the defendant to show facts from which denial of a constitutional right may be reasonably inferred. *See* State v. Chaney, 5 Ariz.App. 530, 428 P.2d 1004 (1967). The record shows that defendant and his attorney were permitted to and did communicate with one another in the preparation of his defense.

   E.  Did the one-on-one identification of the defendant by the victim violate his constitutional rights?

■ The victim and the defendant had known one another for a month prior to the incident and had spent the afternoon

drinking together. A Southern Pacific conductor found the injured victim and called a railroad police officer. Ten minutes later Mitchell explained what had happened and described in detail the man who had injured him. About an hour later police officers, responding to a call concerning another disturbance, apprehended the defendant and brought him before the victim for identification. Bush claims that this one-on-one confrontation was unnecessarily suggestive and conducive to mistaken identification and denied him due process of law. Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Although the practice of showing suspects singly outside a lineup has been widely condemned, the dangers inherent in this type of confrontation were not present in the instant case. Mitchell and Bush knew one another: Mitchell's identification served merely to confirm to the police that the man they had apprehended was the same man Mitchell was accusing of robbery and battery. We find no error.

   F.  Was the polygraph test properly admitted into evidence?

■ Bush contends that the lie detector evidence was inadmissible for three reasons: (1) because he consented to take the test, not knowing that the results could be used at trial; (2) because he consented, not knowing that the results would be affected by his mental condition; and (3) because he was tested under noisy, distracting conditions.

First, the results of lie detector tests are admissible into evidence upon stipulation in Arizona. State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962). The following language appears immediately above Bush's signature on the stipulation:

   "It is agreed both tests may be used in evidence in case of trial."

The polygraph examiner testified that he gave *Miranda* warnings to Bush and told him that the results of the test could be used against him. The record does not support the defendant's allegation that he

was unaware that the results of the test could be admitted into evidence.

 Second, Mr. Bush was given a psychiatric examination and was found not to be suffering from a mental illness. A warning to Bush that a mental condition would affect the outcome of the polygraph test would, under the circumstances, have been superfluous.

 Third, the defendant argues that the conditions under which the test was given were noisy and distracting because of the law-enforcement-type atmosphere. *See Valdez, supra,* 91 Ariz. at 283, 371 P. 2d 894. The record does not support Bush's allegations. The phones in the room did not ring but had signal lights. Sounds from outside the room were muted by the walls and closed door. A "law-enforcement atmosphere" was, he asserts, created by the giving of the *Miranda* warnings. We find no merit in defendant's contention that, on one hand, he did not know the test could be used against him and that, on the other hand, the giving of the *Miranda* warnings informing him that the test could be used against him was an impermissibly distracting condition of the test.

G. If jurors are selected randomly from a voters registration list and then contacted by telephone, is a poor black defendant denied his right to a jury of his "peers" because no poor blacks happen to be chosen to serve on the jury?

 This precise question was dealt with and answered in State v. Chaney, *supra,* and the method of jury selection held to be proper. 5 Ariz.App. 530, 536, 428 P. 2d 1004, 1010.

H. Answer to Supplemental Brief:

Did the trial court correctly determine out of the jury's presence that the appellant's statements were voluntarily given after the Miranda warnings and, therefore, admissible?

 When Bush was being transported from city jail to justice court he made some incriminating statements to a police officer. A hearing was held out of the jury's presence to determine if the statements were admissible. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964). The officer had read Bush his rights from the standard *Miranda* rights card. On the way to justice court, Bush initiated a conversation and then explained how he had beat up the victim, George Mitchell. The court specifically ruled that the statements were admissible because they were freely and voluntarily given. We can find no violation of defendant's rights or of Jackson v. Denno, *supra.*

Conviction affirmed.

STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.

Note: Vice Chief Justice CAMERON did not participate in the determination of this matter.