540 P.2d 1285

The STATE of Arizona, Appellee,

v.

Vincent Paul LATINO, Appellant.

No. 2 CA–CR 609.

Court of Appeals of Arizona, Division 2.

Oct. 7, 1975.

Rehearing Denied Nov. 7, 1975.

Review Denied Dec. 9, 1975.

Bruce E. Babbitt, Atty. Gen., Phoenix, by Jack L. Lansdale, Jr., Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender, by Frederic J. Dardis, Asst. Public Defender, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Appellant, Vincent Paul Latino, was indicted for first-degree arson and arson

with the intent to defraud an insurer in connection with the burning of his house. The jury found appellant guilty of both offenses. The court suspended imposition of sentence and placed appellant on seven years probation conditioned on serving nine months in the Pima County Jail on a work-release program. From the judgment of conviction, appellant brings this appeal. We affirm in part and reverse in part.

Appellant raises essentially three issues for our consideration. He first contends that the trial court erred in denying his motion in limine to exclude evidence that his car was burned four months before the time of the offense charged. He further contends that the trial court should have granted his motions for a directed verdict and for a new trial on the ground that the evidence was insufficient to sustain the verdict. Finally, he contends that the trial court erred in failing to dismiss Count II of the indictment at the time of sentencing.

Considered in the light most favorable to sustaining the verdict, *State v. Flowers,* 110 Ariz. 566, 521 P.2d 998 (1974), the facts are as follows. At about 9:00 p. m. on March 7, 1974, Ronald Gillum, an off-duty Tucson police officer, saw what he thought to be a 1970 to 1972 Cadillac with two flat front tires being driven westward past his trailer. Between five and seven minutes thereafter, he heard multiple explosions. He looked out the window of his trailer and saw a vehicle on fire in the desert nearby. After summoning the police, he drove over to the burning vehicle. When he arrived he saw a dark-blue fastback car parked next to it. One person was inside the fastback and another was just getting in. When Gillum shined his flashlight toward them, they drove away rapidly. In doing so they raised a cloud of dust that obscured the vehicle's license number. Gillum next saw two persons standing about 35 or 40 feet from the burning vehicle. When he shined his flashlight at them, they fled westward into the desert. A subsequent helicopter search failed to locate them. Gillum could not identify any of the four persons he saw that night.

After the fire had been extinguished, Gillum recognized the burned vehicle as the Cadillac that had been driven by his trailer a few minutes before. Looking inside it, he saw a five-gallon can and smelled gasoline fumes. Fire investigators later concluded that the fire was deliberately set. The burned vehicle belonged to appellant.

At trial, Sosimo Sotelo testified that appellant asked him on the morning of March 7, 1974, to fix the two flat tires on his Cadillac. Sotelo testified that he and one "Indian Joe" changed the tires and took the car to appellant at the Buggy Wheel Tavern. Appellant testified he was drinking in the tavern with Jean Larsen while Sotelo was fixing the tires on his car. He further testified that he became drunk and that when Sotelo arrived he was taken to a friend's house to stay the night. Sotelo stated that he left the tavern with appellant at about 9:00 p. m. Although according to Gillum's testimony the car was out in the desert on fire by that time, Sotelo said it was parked in front of the tavern when they left. Appellant testified that the next morning Jean Larsen told him his car was no longer at the tavern. He later reported the car as stolen.

Appellant's ex-wife testified that appellant spoke to her several times about taking his car out into the desert and setting it on fire with gasoline. It was also established that Jean Larsen, the woman who was at the tavern with appellant on March 7, 1974, owned a dark-blue Ford Maverick similar to the car Gillum saw near the burning Cadillac.

Before his Cadillac was burned, appellant was behind on his payments. Afterwards, his insurer paid the balance of the debt appellant owed on the burned car and discharged the lien. Appellant later bought another Cadillac. The payments on the new car were $40 a month lower. Shortly after he bought it, he told his ex-wife he had come out "smelling like roses." Ap-

pellant was never charged in connection with the burning of his first car.

In the late evening of September 9, 1974, appellant's house caught fire and burned. The fire department was able to extinguish the fire before it spread beyond the living room and kitchen area. Fire investigators later discovered a five-gallon container in the house and smelled a flammable substance. They concluded from these discoveries and from the character of the burn patterns that the fire had been deliberately set. The house appeared not to have been entered forcibly. It was later discovered that the five-gallon container was similar to certain containers kept at a body shop near appellant's place of work.

The bartender at the Buggy Wheel Tavern testified that appellant was at the tavern when she arrived there at 5:00 p. m. the day of the fire. She testified that he stayed an hour and a half or two hours and then left, returning at about 10:15 p. m. Witnesses for appellant testified that he went to the tavern at 6:30 p. m., stayed there with friends until 9:00 p. m., then left for about ten minutes with his friend, Larry Bruce, and remained at the tavern thereafter.

At 11:00 p. m. the bartender took a phone call for appellant. The caller's message was that appellant's house was on fire. The bartender relayed this message to appellant, who then drove to his house with a friend.

The next day appellant called his insurer and made a claim for the damage to his house. Several days later appellant went to the insurer's claim office and talked to an insurance adjuster about the status of his claim. The adjuster explained to appellant what the policy limits were. Appellant told the adjuster that if those limits were what he was paying for he should recover up to those limits. The adjuster then explained to appellant that under the policy appellant was entitled to recover only the actual cost of repair and that the cost of repairing appellant's house was less than the policy limits. Appellant then left.

Before the burning of his house appellant was experiencing financial difficulty. During the two months preceding the fire he attempted to sell his house. On August 17, 1974, he listed it with Solot Realty. Jessie Kuchar of Solot testified that appellant was anxious to sell the house. Nancy West stated she offered appellant $3,000 cash-to-mortgage for the house in late July, but appellant told her he would rather collect on the insurance than sell it at that price. Other witnesses testified that appellant made similar statements.

■ Appellant first contends it was reversible error for the trial court to admit evidence concerning the burning of his car. As a general rule, the prosecution may not introduce evidence that the defendant committed a bad act entirely distinct and independent of that for which he is being tried. *State v. Phillips*, 102 Ariz. 377, 430 P.2d 139 (1967); *State v. Daymus*, 90 Ariz. 294, 367 P.2d 647 (1961); *State v. Babineaux*, 22 Ariz.App. 322, 526 P.2d 1277 (1974). The reason for this rule is that proof of another bad act improperly raises:

" . . . a presumption of guilt, on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another." *Dorsey v. State*, 25 Ariz. 139, 143, 213 P. 1011, 1012 (1923).

Further, such evidence:

" . . . tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts in accordance with their views on false issues rather than on the true issues on trial." *State v. Hughes*, 102 Ariz. 118, 122, 426 P.2d 386, 390 (1967).

■ Thus, if evidence of other bad acts committed by a defendant is offered merely to show that he is disposed to commit crimes, it may not be admitted. *State v. Keith*, Ariz.App., 537 P.2d 1333 (1975).

■ The general rule does not apply, however, where the evidence is offered to

prove motive, intent, absence of mistake or accident, identity, or common scheme or plan. *State v. Hughes,* supra; *State v. Hardin,* 99 Ariz. 56, 406 P.2d 406 (1965); McCormick on Evidence § 157. As we noted in *State v. Chaney,* 5 Ariz.App. 530, 428 P.2d 1004 (1967), the trial court has some discretion in determining whether to admit such evidence under an exception to the general rule. Factors the trial court should weigh in exercising its discretion are:

"(1) the degree of proof of the other bad acts . . . and (2) the relative amount of prejudice to the defendant that would be caused by the admission of the evidence as opposed to its probative value in the trial of the case at hand." 5 Ariz.App. at 538, 428 P.2d at 1012.

Appellant's contention that it was error to admit evidence of the burning of his car presents two distinct questions. The first is whether the State introduced sufficient evidence to show that defendant participated in burning his car. The second is whether, assuming the State's evidence was sufficient, the evidence was admissible under an exception to the general rule.

■ Before evidence of other bad acts may be used against a defendant under any exception, the State must prove by "substantial evidence sufficient to take the case to a jury" that defendant committed the act. *State v. Hughes,* supra; *State v. Keith,* supra. *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970) has clearly rejected the former Arizona rule that proof of other bad acts by circumstantial evidence must be inconsistent with every reasonable hypothesis of innocence.

■ Here appellant made statements to his ex-wife about burning his car in the desert, two persons fled the scene in a dark-blue fastback like the one owned by appellant's companion for the evening, appellant had a financial motive to destroy his car, and the jury could reasonably reject the evidence tending to establish an alibi. With *Harvill's* relaxation of the standard of proof by circumstantial evidence in mind, we think the State adduced "substantial evidence sufficient to take the case to a jury" on the question of whether appellant participated in the burning of his car.

Appellant also argues that even if the State adduced sufficient evidence of his participation, such evidence did not establish a common scheme or plan and should have been excluded under the general rule. We need not decide whether the burning of appellant's car sufficiently showed a common scheme or plan, for we think the evidence thereof was admissible on the issue of identity.

■ In *State v. Hernandez,* 7 Ariz.App. 200, 437 P.2d 952 (1968) we noted that when evidence is offered to prove identity through a distinctive *modus operandi*:

". . . it is required that there be a high degree of similarity between the offenses and an element of uniqueness in the method of commiting the crimes so as to give grounds for the inference that the crimes are committed by the same person." 7 Ariz.App. at 204, 437 P.2d at 956.

The requisite uniqueness and similarity may be manifested by the defendant's appearance, by the character of his physical acts, or by the accompanying circumstances. *See, Greve v. State,* 36 Ariz. 325, 285 P. 274 (1930); McCormick on Evidence § 157.

■ Appellant was in financial difficulty before both fires. Both times it was his property that burned, he claimed he was in the Buggy Wheel Tavern when the fires occurred, and five-gallon cans filled with flammable liquid accelerants were used. Moreover, in both instances the cans were left on the scene with the apparent purpose of causing explosions. Finally, in both instances appellant collected insurance. We think the circumstances that surrounded the burning of appellant's car and the burning of his house possess a high degree of similarity. In addition, the abandon-

ment of accelerant-filled cans at the scene both times supplies an element of uniqueness. The evidence of the burning of appellant's car was sufficient to raise an inference that the same person burned his house. It was therefore admissible to establish identity. *See, State v. Thomas,* 110 Ariz. 106, 515 P.2d 851 (1973); *State v. Chance,* 92 Ariz. 351, 377 P.2d 197 (1962); *State v. Francis,* 91 Ariz. 219, 371 P.2d 97 (1962).

 At the time of sentencing, the trial judge stated that it was the judgment of the court that appellant was guilty of first-degree arson and arson with the intent to defraud an insurer. He then sentenced appellant to seven years probation without specifying which offense the sentence applied to. The sentence is within the statutory limits for first-degree arson, but exceeds the statutory limits for arson with intent to defraud an insurer. Appellant contends that punishing him for both crimes of which he was convicted would violate A.R.S. § 13–1641, which provides:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

In *State v. Tinghitella,* 108 Ariz. 1, 491 P.2d 834 (1971), our Supreme Court adopted an "identical elements" test for determining whether A.R.S. § 13–1641 applies. Under that test the court must:

" . . . eliminate the elements in one charge and determine whether the facts left would support the other charge." 108 Ariz. at 4, 491 P.2d at 836.

In the instant case the facts that support appellant's conviction for first-degree arson are that he willfully and maliciously set fire to his home. Absent those facts, his conviction of arson with the intent to defraud an insurer is unsupportable. A.R.S. § 13–1641 thus applies and precludes punishment for both crimes. Since "punishment" within A.R.S. § 13–1641 includes both the conviction and the sentence imposed thereon, *State v. Lippi,* 108 Ariz. 342, 498 P.2d 209 (1972), the lesser conviction must be set aside. *State v. Mendoza,* 107 Ariz. 51, 481 P.2d 844 (1971). Appellant's conviction for arson with intent to defraud an insurer must therefore be set aside. The sentence imposed by the trial court is within the statutory limits for first-degree arson, hence no resentencing is required.

 Appellant further argues that the trial court erred in denying his motions for directed verdict and for a new trial because the evidence was insufficient to support the verdict. A directed verdict should not be granted if the evidence is such that reasonable minds may differ on the inferences to be drawn therefrom. *State v. Reynolds,* 108 Ariz. 541, 503 P.2d 369 (1972). It is not error to refuse to direct a verdict where there is substantial evidence that defendant committed the crimes with which he is charged. *State v. Money,* 110 Ariz. 18, 514 P.2d 1014 (1973). From our review of the record we conclude that there was substantial evidence that appellant committed first-degree arson. The trial court properly refused to direct a verdict of acquittal. Further, we think the trial court did not abuse its discretion in refusing to order a new trial. *See, State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973).

The judgment of conviction for first-degree arson is affirmed. The judgment of conviction for arson with the intent to defraud an insurer is set aside.

HOWARD, C. J., and HATHAWAY, J., concur.