NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HELENE DENITANG, et al., *Plaintiffs/Appellants*,

*v.*

ARIZONA THERAPY SOURCE SALES SERVICE, INC.,
*Defendant/Appellee*.

No. 1 CA-CV 20-0050

FILED 12-1-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-012355
The Honorable James D. Smith, Judge

**AFFIRMED**

COUNSEL

Gill Law Firm, Buckeye
By Jeffrey R. Gill, Meghann L. St. Thomas
*Co-Counsel for Plaintiffs/Appellants*

Miller, Pitt, Feldman & McAnally, P.C., Tucson
By Timothy P. Stackhouse, Stanley G. Feldman, Gerald Maltz
*Co-Counsel for Plaintiffs/Appellants*

The Moulton Law Firm, P.C., Scottsdale
By Timothy L. Moulton
*Co-Counsel for Defendant/Appellee*

Hill, Hall & DeCiancio, PLC, Phoenix
By Christopher Robbins
*Co-Counsel for Defendant/Appellee*

Mark W. Clary, P.L.L.C., Tempe
By Mark W. Clary
*Co-Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

**¶1** Plaintiff Samuel Ndjedanem Beti, by and through his legal guardian, Helene Denitang, appeals the superior court's judgment after a jury trial in favor of Defendant Arizona Therapy Source Sales Service, Inc. ("AZ Therapy"). The underlying negligence action arose out of injuries Beti sustained during a physical therapy session at Strength Training, Inc. ("STI"). Beti argues that several errors occurred that require a new trial. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY[2]

**¶2** On July 18, 2013, Beti, then 15 years old, was engaging in physical therapy at STI following knee surgery due to a basketball injury. The physical therapy included walking on a treadmill owned and

---

[1] We review the evidence in the light most favorable to upholding the verdict. *See, e.g.*, *McFarlin v. Hall*, 127 Ariz. 220, 224 (1980).

[2] AZ Therapy argues Beti's "Statement of Facts" in his opening brief "is so cryptic and incomplete as to provide little assistance" in resolving this appeal. We agree that Beti's briefing contains deficiencies. *See, e.g.*, ARCAP 13(a)(5), (7). Nonetheless, we decline to summarily reject Beti's appeal on this basis. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966); *Lederman v. Phelps Dodge Corp.*, 19 Ariz. App. 107, 108 (1973).

maintained by STI.[3]  At some point while on or near the treadmill, Beti fell and hit his head on the floor of the STI facility, suffering brain trauma.  STI personnel did not observe the fall.

**¶3**　　　　　Prior to these events, STI conducted daily, weekly, and monthly inspections, testing, and maintenance of the treadmill to ensure it was working properly.  Additionally, STI had hired AZ Therapy to perform annual electrical safety inspections of some of its training equipment, including the treadmill used by Beti.  These inspections were solely electrical safety inspections intended to prevent electrical-shock or fire hazards; they did not include, or need to include, inspection of mechanical components, such as the deck or belt.  On May 30, 2013, approximately two months before Beti was injured, AZ Therapy had conducted its most recent annual electrical safety inspection of the treadmill.

**¶4**　　　　　In August 2014, Beti, through his grandmother, Denitang, filed a complaint against STI and its employees for negligence, premises liability, and medical negligence in Maricopa County Superior Court case no. CV2014-011009.  STI's insurance carrier intervened, and the claims were eventually settled.

**¶5**　　　　　During the litigation involving STI, several experts performed multiple inspections of the treadmill.  STI had retained Timothy Leggett, a mechanical engineer, and Johan Ivarsson, Ph.D., a biomechanical engineer, to inspect STI's facility and the treadmill, prepare reports, and possibly testify.  Leggett was hired to examine the mechanical/functional aspects of the treadmill and to address the opinions of Beti's expert, David Paulus, Ph.D., a mechanical engineer; Dr. Ivarsson was hired to conduct a biomechanical analysis to determine what fall scenarios were consistent with the evidence in the case and to address the opinions of Kerry Knapp, Ph.D., Beti's expert in injury biomechanics and human anatomy.

**¶6**　　　　　In March 2015, approximately one year and eight months after the incident, Leggett and Dr. Ivarsson inspected, measured, and conducted various operational tests on the treadmill, including walking on it at different speeds and elevations, and observing others using it.  They also gathered information about what had happened on the day of Beti's injury and Beti's body position after the incident.  Dr. Ivarsson returned to inspect the treadmill again in March 2016.  On September 30, 2016—more than three years after Beti's accident—Dr. Paulus and Dr. Knapp performed their only inspection of the treadmill.  Subsequently, Leggett and Dr.

---

[3]　　　　This was the third time Beti had used the treadmill.

Ivarsson inspected the treadmill again in February 2017. Finally, in April 2017, Leggett conducted another inspection of the treadmill, which was apparently still in use.[4]

**¶7**        In September 2017, Beti, through Denitang, filed a negligence complaint against AZ Therapy. Beti alleged that, in inspecting the treadmill, AZ Therapy negligently failed to identify and repair the treadmill's worn deck, and as a result, when Beti was using the treadmill, the belt snagged on the deck, causing it to "stutter" and causing Beti to fall off the treadmill.

**¶8**        AZ Therapy (1) denied that it owed Beti a duty; (2) contended that even if a duty existed, it had not breached any duty; and (3) denied that any of Beti's injuries were actually or proximately caused by its actions or failure to act. AZ Therapy maintained Beti could not show its electrical inspection was negligent or that any treadmill problem, if one existed, caused Beti to fall. Not surprisingly, AZ Therapy contended that, at best, Beti's experts could "only guess or speculate about the possible events leading up to and causing the alleged uncontrolled fall."

**¶9**        At trial, Dr. Paulus and Dr. Knapp testified on behalf of Beti. Dr. Paulus testified he was retained to inspect the condition of the treadmill, and he opined that the treadmill had become unsafe to use because the belt was "glazed," the deck was "worn out," and the handrails were "loose." On cross-examination, Dr. Paulus testified he walked, ran, and changed elevation on the treadmill while conducting his examination of the machine, and he conceded he had not tripped, stumbled, slipped, fallen, or lost his balance, despite wearing hiking shoes while doing so. Dr. Knapp testified that Beti's resting position was consistent with an uncontrolled fall off the back of the treadmill while it was running at 3.3 miles per hour. On further direct examination, Dr. Knapp testified that although he was "old" with "walking issues," he also had walked on the treadmill—ostensibly while wearing cowboy boots—without falling, but he did note he held onto the treadmill's rails as a safety precaution. Neither testified to experiencing or observing any "stutter" in the operation of the treadmill belt.

---

[4]        At trial, some STI employees testified they believed the treadmill was eventually taken out of service, but they were unclear when that occurred. Dr. Paulus, relying on the statements of those STI employees, testified he believed the treadmill had been taken out of service, but stated that even if it had not been, the additional wear from several additional years of service "wouldn't have changed it that much more."

¶10        AZ Therapy retained Leggett and Dr. Ivarsson, the same experts retained by STI, and each testified at trial. Leggett testified in part that when he walked on the treadmill and observed others, including Dr. Ivarsson, doing so, the treadmill appeared to run properly and he observed nothing wrong with its belt or deck; he conceded, however, that he had not dismantled the machine to look under the belt. Dr. Ivarsson testified in part that he and Leggett, who vary substantially in size, each walked on the treadmill to determine if its deceleration might be affected by body weight, and he opined that "basic physics" disproved Dr. Knapp's opinion, which he contended failed to account for critical facts and testimony from other witnesses. On cross-examination, he explained he had walked on the treadmill because he "wanted to get a sense for it," and that he was not necessarily implying the treadmill was safe when Beti was injured.[5] AZ Therapy also elicited testimony on cross-examination from a long-time STI employee, Dane Dorsten—whose duty it was to inspect, conduct safety checks on, and maintain the treadmill—that he was unaware of any "mechanical problems, defects, conditions or incidents involving this treadmill," either in the three years he had been employed at STI before Beti's accident or in the years afterward.

¶11        At the conclusion of the nine-day trial, the jury returned a general defense verdict in favor of AZ Therapy.[6] The superior court subsequently entered final judgment in favor of AZ Therapy. Beti moved for a new trial and an evidentiary hearing on the motion, which the court denied.

¶12        We have jurisdiction over Beti's timely appeal. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-2101(A)(1), (5)(a).

---

[5]        Beti concedes that "Dr. Ivarsson did not testify about whether the treadmill seemed to operate safely."

[6]        The verdict forms contained no findings except the verdict (and an allocation of fault and damages if the jury found AZ Therapy liable). Additionally, no special interrogatories were submitted to the jury, and it appears none were requested. In general, "[t]he rule in Arizona is that, in the absence of a request that the jury bring in a special verdict on each count if several counts, issues or theories are tried and submitted to the jury, a general verdict will stand if evidence on one count, issue or theory is sufficient to sustain the verdict." *Papastathis v. Beall*, 150 Ariz. 279, 283 (App. 1986) (citing *Reese v. Cradit*, 12 Ariz. App. 233, 238-39 (1970) (citing cases)).

## ANALYSIS

### I.     Beti's Challenges to AZ Therapy's Expert Witnesses

**¶13**        To establish a negligence claim, a plaintiff must prove four elements: (1) a legal duty or obligation requiring the defendant to conform to a certain standard of care; (2) the defendant's failure to conform to the required standard; (3) a causal connection between the defendant's conduct and the plaintiff's resulting injury; and (4) actual loss or damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007); *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983) (citing William L. Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971); *Wisener v. State*, 123 Ariz. 148, 149 (1979)).

**¶14**        On appeal, Beti argues the superior court erred in allowing AZ Therapy's experts—Leggett and Dr. Ivarsson—to testify about their post-accident use of the treadmill and Leggett's observations of others walking on the treadmill without incident because their testimony was not the proper subject of expert testimony[7] and was, according to Beti, at least in part duplicative, violating the one-expert-per-issue rule.[8] Beti further maintains "[t]here was no foundation for admission of the purported lack of post-incident accidents" because "[t]here was no testimony that STI or AZ Therapy had any system in place to ensure they would have known of any incidents," and any testimony about walking on the treadmill "was not helpful to the jury."

---

[7]        Beti argues AZ Therapy's experts provided mere "opinion testimony," akin to a lay witness testifying to the estimated speed of an automobile, because they provided relatively few facts to support the inferences they drew.

[8]        To avoid duplicative and cumulative expert opinions, each side is presumptively allowed only one expert per issue. *See* Ariz. R. Civ. P. ("Rule") 26(b)(4)(F)(i) (stating that, generally, "[u]nless the parties agree or the court orders otherwise for good cause, each side is presumptively entitled to call only one retained or specially employed expert to testify on an issue"). Nonetheless, the rule contemplates liberal expansion of its presumptive limitation when "an issue cuts across several professional disciplines." Ariz. R. Civ. P. 26(b)(4) cmt. to 1991 amend. to Rule 26(b)(4)); *see also Hardt v. AZHH, LLC*, 242 Ariz. 449, 452, ¶ 11 (App. 2017) (recognizing the simple intent of the rule is to limit the presentation of cumulative evidence).

**¶15** We will affirm the superior court's rulings on the admission of evidence absent an abuse of discretion or legal error and resultant prejudice. *See Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996); *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 88, ¶ 7 (App. 1998) (citing *Gasiorowski v. Hose*, 182 Ariz. 376, 382 (App. 1994)). Thus, we will not reverse if the jury would have reached the same verdict without the admitted evidence. *See Brown*, 194 Ariz. at 88, ¶ 7. We review legal questions and the interpretation of statutes *de novo*. *See, e.g.*, *Open Primary Elections Now v. Bayless*, 193 Ariz. 43, 46, ¶ 9 (1998).

**¶16** We also review the denial of a motion for a new trial for an abuse of discretion. *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015); *Larsen v. Decker*, 196 Ariz. 239, 244, ¶ 27 (App. 2000). In considering a motion for a new trial, the superior court "must respect the role of the jury and the integrity of the jury trial system." *State v. Fischer*, 242 Ariz. 44, 50, ¶ 19 (2017) (citing *Cal X–Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 403, ¶ 88 (App. 2012)). Determining the credibility of witnesses and finding the facts is primarily the province of the jury, and a judge has no "vote in deciding the case, much less a vote equal to or greater than that of the jurors; but given the judge's training, experience, and unique vantage point, the judge must have substantial latitude in overseeing the jury verdict." *Id.*; *see also Reeves v. Markle*, 119 Ariz. 159, 163 (1978) (recognizing that we generally afford the trial court wide deference because "[t]he judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record").

**¶17** In determining whether Beti has been prejudiced, we examine whether the alleged errors materially affected his rights. *See* Ariz. R. Civ. P. 59(a)(1) ("The court may, on motion, grant a new trial on all or some of the issues--and to any party--on any of the following grounds materially affecting that party's rights . . . ."); *see also Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 562 (App. 1993) ("To justify reversal, trial errors must be prejudicial to the substantial rights of the appealing party." (citing *Walters v. First Fed. Sav. & Loan Ass'n of Phoenix*, 131 Ariz. 321, 326 (1982))).

**¶18** Here, even assuming without deciding that the superior court improperly admitted some portions of testimony from AZ Therapy's experts, and further assuming none of Beti's arguments with regard to the expert testimony were waived (as argued by AZ Therapy), Beti cannot demonstrate that his rights were materially affected and prejudice resulted requiring a new trial.

¶19      In considering Beti's motion for a new trial, the superior court thoroughly addressed Beti's expert witness testimony arguments, including his argument that, if the evidence should have been excluded, he had been prejudiced.  In concluding that Beti had not been prejudiced, the court explained:

> [Beti's] claim depended on [AZ Therapy] performing comprehensive safety checks of the equipment at the physical therapy facility.  [AZ Therapy's] principal [Alan Stotts] testified unambiguously that he never provided comprehensive safety inspections; instead, his annual visits examined only the electrical functions of certain machines.[9]  Every witness from the [STI] physical therapy facility acknowledged that facility employees performed daily, weekly, and monthly inspections—inspections that one would expect to note worn decks or belts.  The jury learned of [Beti's] allegations in earlier litigation that the physical therapy facility was responsible for the unreasonably dangerous condition of the treadmill.[10]

¶20      Having observed first-hand the witnesses and evidence presented, the superior court was best qualified to determine whether a new trial was warranted.  *See Reeves*, 119 Ariz. at 163.  The superior court did not abuse its sound discretion in concluding the jury would have reached the same verdict even without presentation of the challenged evidence, and therefore did not abuse its discretion in upholding the verdict and denying Beti's motion for a new trial.  *See Fischer*, 242 Ariz. at 50, ¶¶ 19-

---

[9]      Beti never alleged that any electrical problem with the treadmill caused him to fall, and at oral argument, Beti's appellate counsel conceded this was "not an electrical accident."  Further, Beti's expert witness, Dr. Paulus, testified he did not find any electrical problem with the treadmill; instead, he identified only what he believed were *mechanical* problems with the treadmill.

[10]      We further note that AZ Therapy's experts, by category of expertise, corresponded to those utilized by Beti; as such, any general assertion that AZ Therapy violated the "one expert per issue" rule is rejected out of hand.  Further, the testimony of Leggett and Dr. Ivarsson was responsive to the observational and opinion testimony offered by Dr. Paulus and Dr. Knapp.  As such, the testimony of the defense experts can hardly be characterized as impermissibly cumulative.

25. On this record, Beti's generalized claim that he was prejudiced is simply unsupported.[11]

## II.     Alleged Witness Coaching

**¶21**     Beti also argues the superior court abused its discretion by not holding an evidentiary hearing on a juror's allegation of witness "coaching." Beti maintains he was denied a fair trial when defense counsel, Timothy L. Moulton, allegedly coached Stotts while Stotts was on the witness stand.

**¶22**     We will not overturn a decision regarding the conduct of a trial absent an abuse of the superior court's discretion. *See State v. Just*, 138 Ariz. 534, 550 (App. 1983). Further, we review for an abuse of discretion the superior court's denial of an evidentiary hearing, *see State v. Hidalgo*, 241 Ariz. 543, 548, ¶ 7 (2017), and the denial of a motion for new trial based on alleged witness coaching, *see State v. Fullen*, 1 Ariz. App. 466, 470 (1965).

**¶23**     In general, a party's failure to object at the time of an alleged error constitutes a waiver of the objection, absent fundamental error. *See generally Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 305, ¶ 16 (App. 1999) ("Prompt objection allows the trial court to 'impose restraints upon counsel once it appears that argument is proceeding past legitimate boundaries.'" (quoting *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 453

---

[11]     At oral argument, Beti's appellate counsel argued the testimony of Mark Hyland, the clinical director at STI, established that AZ Therapy owed a duty to Beti and others using the STI equipment based on the 2013 version of Arizona Administrative Code ("A.A.C.") R9-10-1030 and the oral agreement and course of conduct between STI and AZ Therapy. The plain language of A.A.C. R9-10-1030 does not by itself establish such a duty on AZ Therapy's part, and the testimony of Hyland—who conceded throughout his testimony that he did not recall any conversations with Stotts as to AZ Therapy's responsibilities and did not know or understand what AZ Therapy did—may be generously characterized as equivocal speculation, even assuming, as we must, that he was credible. *See Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 85 (App. 1995). Accordingly, although we do not decide the issue, we have serious doubts whether AZ Therapy voluntarily assumed a duty to Beti and other users of the treadmill to provide mechanical inspections or otherwise prevent slips, trips, and falls based on the oral agreement between AZ Therapy and STI for AZ Therapy to ensure that STI stay in compliance with State of Arizona electrical safety regulations.

(1982))). Further, we will not reverse a superior court's discretionary, factual finding that attorney misconduct did not occur or did not actually influence the verdict unless the record clearly establishes the court was incorrect. *Id.* at ¶ 18 ("[E]ven if we assume misconduct did occur, the trial court's denial of appellants' motion for new trial necessarily implies that the court did not find the misconduct of such magnitude that it actually influenced the verdict.").

¶24 On the eighth day of trial, after Stotts testified, the superior court advised both counsel outside the presence of the jury that a juror had informed the bailiff that "she observed [AZ Therapy's counsel] Mr. Moulton shaking his head or nodding [and] that the juror interpreted [this] to be coaching the witness [Alan Stotts]."[12] The superior court noted that it "didn't observe anything," but suggested that, "if somebody feels like they need to go look at FTR[13] to see what's going on, they can . . . and then if you want to point me to specific timestamps, I'll take a look at it." Moulton denied having coached Stotts, and after a brief discussion, Beti's counsel agreed, stating, "And our position, . . . I don't think there's any impropriety." Beti's counsel then stated he did not "want to investigate if Mr. Moulton did something wr[o]ng," but requested that he be allowed to "look at some case law tonight just to see if there's any issues" and "to preserve anything that we need to do given what was reported."

¶25 Later that evening, AZ Therapy emailed the court and Beti's counsel, moving for a mistrial or other curative measures on the basis that it had been, or was likely to be, prejudiced by the juror's observations. Before trial continued the next morning, the court addressed the motion, noting that "one of the proposals was that we remove that juror as an alternate." Counsel for Beti objected to both the motion for a mistrial and removal of the juror as a curative measure. After a lengthy discussion, during which neither party requested the court hold an evidentiary hearing

---

[12] The court did not provide either counsel with the juror's identity.

[13] In general, FTR, or "For the Record," is a digital video recording system used to record court proceedings, often in lieu of a court reporter. *Gersten v. Gersten*, 223 Ariz. 99, 101, ¶ 3 (App. 2009).

or otherwise question the juror,[14] the court denied the motion.[15]  As part of the discussion, both parties agreed not to mention the juror's allegation during closing argument, and the court agreed to modify a standard jury instruction to address the issue.  The modified jury instruction stated, "The lawyers' questions, arguments, *and conduct* are not evidence.  You should not consider those things when reaching your verdict."  (Emphasis added.)  Counsel for both parties agreed to this modified instruction, which the court read to the jury as part of the court's final instructions.

¶26        After the jury rendered its verdict and the court issued its judgment in favor of AZ Therapy, Beti moved for a new trial and a related evidentiary hearing, arguing in part that defense counsel had "improperly coached defendant Alan Stotts during cross-examination."

¶27        The superior court denied Beti's request for an evidentiary hearing, noting, "The FTR recording exists, and the Court is able to review it.  [Beti] did not explain what other evidence would warrant an evidentiary hearing on this issue."  Beti then filed a second request for an evidentiary hearing, based in part on an alleged unrelated error in the certified transcript[16] and in part on Beti's previous allegation of witness coaching, and the court again denied Beti's request:

---

[14]        Although neither party raised the issue of separately questioning the juror, the superior court nonetheless stated it was not inclined to do so, out of concern that such questioning would simply highlight the issue to the juror and, even with instructions not to consider the issue, might create prejudice where none existed.  AZ Therapy's counsel expressed agreement with the court's stance as to this issue, and Beti's counsel did not object.

[15]        During the discussion, counsel for Beti stated she had not reviewed the recording of the previous day's proceedings, but stated, "I know [the court] reviewed it."  The court corrected counsel's misperception, clarifying it had not done so and reminding counsel, "That's why I brought it to your attention; so if you guys thought it was something you wanted to look at, you could.  And then you could tell me y[ea] or nay we think something inappropriate happened."  The court also noted that, given the limitations of the court's recording system, it was unlikely any improper conduct, even if it did occur, had been recorded.

[16]        In Beti's reply to AZ Therapy's response to his motion for new trial, Beti pointed to a portion of the July 16, 2019 (Day 7) trial transcript that

[Beti] did not identify any evidence or testimony he would present at such a hearing. [Beti] did not indicate whether his counsel reviewed the FTR recording of the portion of the trial at issue, whether counsel has contacted the court reporte[r] about the issue, or whether his counsel disputed [AZ Therapy's] assertions. The Court will not schedule an evidentiary hearing without such information.

¶28        The superior court then denied Beti's new trial motion, rejecting Beti's argument on "witness coaching":

A juror told Court staff that the juror believed one of [AZ Therapy's] lawyers was coaching [Stotts] via nods and headshakes while he testified. The Court reviewed the FTR recording of the alleged coaching and did not see any improper behavior. [Counsel for Beti] tacitly conceded in her Motion [for New Trial] that the recording is benign. If any coaching occurred, it was not significant. Moreover, the alleged coaching appeared to harm the juror's impression of defense counsel more than anything else. The Court cannot discern, and [Beti] did not suggest, any way in which purported coaching affected the witness' testimony. Indeed, [Beti] *opposed* [AZ Therapy's] motion for a mistrial after the Court disclosed the juror's comments. If [Beti] believed that the alleged coaching prevented a fair trial, then [Beti] would have endorsed starting anew.

¶29        Beti argues the superior court abused its discretion in denying his requests for an evidentiary hearing in support of his motion for a new trial. Even assuming *arguendo* that Beti did not waive his argument by (1)

_____

indicated AZ Therapy's counsel elicited testimony from Dr. Ivarsson as both a "mechanical engineer" and a "biomechanical engineer." Beti argued Dr. Ivarsson's testimony was duplicative if he testified in both engineering capacities because Timothy Leggett had testified as AZ Therapy's mechanical engineering expert. AZ Therapy disputed the accuracy of the transcript, arguing counsel had said "biomechanical engineer" in both questions to Dr. Ivarsson, and moved to correct the record. After reviewing the FTR recording of the portion of the trial at issue, the court concluded AZ Therapy's counsel had used the term "biomechanical engineer" in both instances and Beti had effectively conceded this point by failing to respond to the motion. The court granted AZ Therapy's motion to correct the record by replacing the word "mechanical" with the word "biomechanical."

initially conceding that no impropriety had occurred, (2) failing to review the FTR recording before trial the next day, (3) objecting to both AZ Therapy's motion for a mistrial and removal of the juror as a curative measure, (4) failing to timely request the court hold an evidentiary hearing or otherwise question the juror, and (5) agreeing that modification of the final jury instructions would suffice as a precautionary curative measure, we find no error.

¶30        In deciding Beti's motion for a new trial, the superior court reviewed the portion of the July 17, 2019 FTR video at issue (from 2:15 p.m. to 2:30 p.m.) and "did not see any improper behavior." We have also reviewed that same portion of the FTR recording, which was submitted pursuant to this court's order, and to the extent we were able to view counsel and the witness, observed nothing that would support a claim of witness coaching. Beti's attorneys had an opportunity to view the same FTR video before requesting an evidentiary hearing, but apparently failed to do so, and outside of the jury member's allegation, they have provided nothing except speculation to support their accusation that improper and potentially prejudicial witness coaching occurred. We will not reverse based on mere unsupported speculation of prejudice, *see E. Camelback Homeowners Ass'n v. Ariz. Found. for Neurology & Psychiatry*, 18 Ariz. App. 121, 128 (1972), and do not approve of counsel failing to raise or fully litigate an issue before the superior court in the hope that, if they fail to win their case on its merits, they have an "ace in the hole" to rely on as a means of securing reversal on appeal, *see State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (disapproving of a defendant "taking his chances on a favorable verdict, reserving the 'hole card' of a later appeal on a matter that was curable at trial, and then seeking appellate reversal" (brackets and citation omitted)); *Kinman v. Grousky*, 46 Ariz. 191, 193 (1935) (noting that such a practice is "obviously unfair to a busy trial judge and certainly not in furtherance of justice and the determination of cases on their merits").

¶31        On this record, the superior court did not abuse its discretion in denying Beti's requests for an evidentiary hearing or otherwise err in denying Beti's new trial motion on the basis of the juror's allegation of "witness coaching" by AZ Therapy's counsel.

        III.    *Standing While Objecting*

¶32        Beti also argues error occurred because AZ Therapy's counsel stood to make objections. We discern no error.

¶33　　　　We will not overturn a decision regarding the conduct of a trial absent an abuse of the superior court's discretion. *See Just*, 138 Ariz. at 550.

¶34　　　　On the second day of trial, the superior court requested that AZ Therapy's counsel stand when making an objection, stating, "Counsel, if you stand when you make an objection, it will trigger the witness [to either not answer or stop talking], and it will also give me an opportunity to see if there's an objection."[17] AZ Therapy's counsel agreed to do so. Later that same day, the court reminded both counsel:

> Oh, and I did make a statement during the testimony, but just for both of you. If you are making an objection, it's much better for me if you stand, because I'm either looking at the witness [or] I may be pulling up an exhibit, so I'll see somebody stand up out of my peripheral vision, and I can either stop a witness from answering, or I'll be able to address it much more effectively that way. Plus, it will also signal to the witness that there's something about to happen, and he or she probably will stop. And if they don't stop, I'll interrupt them.

¶35　　　　On the eighth day of trial, Beti's counsel objected to AZ Therapy's counsel standing while making objections. The court denied the objection, explaining that counsel "doesn't want a witness to answer something that he finds objectionable." Later that day, the court reminded Beti's counsel to do the same, stating, "By the way, again, as I explained earlier, could you stand when you state an objection so we're all aware that the objection is coming?" Beti's counsel also agreed to do so.

¶36　　　　In this case, by standing when making an objection, AZ Therapy's counsel merely followed the superior court's instruction that counsel stand to make objections. Beti does not explain how he was prejudiced by this common-sense procedure, and we find no error in its application.

---

17　　　　In its answering brief, AZ Therapy represents, without citation to the record, that on the last page of the superior court's "Protocols," the court had previously directed the attorneys to stand when making objections. Beti does not dispute this unsupported representation in his reply brief.

## CONCLUSION

¶37      The superior court's judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA